STEVEN W. DALESSIO *vs.* KATHLEEN M. DALESSIO
(and a companion case[1]).

Plymouth. January 9, 1991. - April 29, 1991.

Present: LIACOS, C.J., WILKINS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Divorce and Separation,* Division of property, Interest in proceeds from
personal injury lawsuit. *Practice, Civil,* Relief from judgment.

In a divorce proceeding, the proceeds of the husband's personal injury
judgment arising from his involvement in an industrial accident, at
least to the extent of recovery for loss of earning capacity and medical
expenses, and including an annuity purchased by proceeds from the
personal injury suit, were part of the marital estate subject to equitable
division under G. L. c. 208, § 34, and consequently, the judge did not
err in admitting actuarial evidence of the present value of the annuity,
or in including the annuity within the husband's assignable estate.
[825-829]

In a divorce proceeding in which the parties contested the judge's inclusion
of certain proceeds received by the husband in a personal injury action,
pursuant to a general verdict returned by the jury, as part of the mari-
tal estate, the judge, after considering the factors set forth in G. L.
c. 208, § 34, did not abuse his discretion in designating one-third of the
proceeds as compensation for pain and suffering, while the remaining
two-thirds were for medical expenses and lost earning capacity [829-
831]; nor was there an abuse of discretion in the judge's dividing the
proceeds to the extent that the wife received a share of the husband's
compensation for future lost wages, future loss of earning capacity, and
future expenses, where the judge effectively reduced the award to the
wife in recognition of the fact that a portion of the proceeds was to
cover post-divorce losses experienced only by the husband [831-832].

This court stated that, in future divorce proceedings in which a spouse has
recovered proceeds of a lawsuit, a portion of which was to cover post-
divorce losses experienced only by that spouse, judges should indicate
for the record that they have considered this fact and that it has en-
tered into their division of the marital assets. [831]

In a divorce proceeding, the judge did not abuse his discretion in acting
pursuant to Mass. R. Dom. Rel. P. 60 (b) (1) to rectify a mistake in his

---

[1]Kathleen M. Dalessio *vs.* Steven W. Dalessio.

division of the parties' assets by recalculating the division so as to make it logically consistent with a prior decision in the proceeding. [832-833]

COMPLAINTS for divorce filed in the Plymouth Division of the Probate and Family Court Department on April 17, 1987, and June 9, 1987, respectively.

The cases were heard by *George N. Asack*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Stephen C. Maloney* for Steven W. Dalessio.

*Michael J. Traft* (*Beverly Boorstein* with him) for Kathleen M. Dalessio.

GREANEY, J. After a trial on cross complaints for divorce, a judge in the Probate and Family Court entered judgments of divorce, and he divided the marital assets between the parties. Pursuant to motions of Kathleen M. Dalessio (wife), the judge later corrected the judgment, and still later amended the corrected judgment. Steven W. Dalessio (husband) appealed, and we transferred the cases to this court on our own motion. We affirm.

The relevant facts found by the judge are as follows. The parties were married in 1972. Two children were born of the marriage. The husband worked as a machinist; the wife was employed by a printing company. The family resided in a house owned jointly by the parties.

In 1980, the husband was involved in an industrial accident and lost his left arm. Suit was filed on behalf of the husband and the wife (for loss of consortium) against the manufacturer of the machine that caused the husband's injuries. This action was tried in 1986, and the jury (by a general verdict) awarded the husband $3,000,000 and the wife $1,000,000. With interest, the judgment totalled roughly $7,000,000. The manufacturer's liability insurance was insufficient to cover the entire judgment, however, so the parties accepted a structured settlement with a present cash value of approximately $3,000,000.

After providing for attorneys' fees, the workers' compensation subrogation claim, and expenses, the terms of the settlement were essentially as follows. In exchange for releases, the husband received: (1) an annuity of $6,000 monthly for life, with a present cash value of $801,363; and (2) a cash lump sum of $514,529. The wife received: (1) an annuity of $2,000 monthly for life, with a present cash value of $271,032; and (2) a cash lump sum of $200,000. The parties combined their lump sum payments (with the exception of $14,529 withheld by the husband) and opened a joint investment account. At the time of trial, this account was valued at $716,141.

In 1986, the wife began an extramarital affair that was ongoing at the time of the divorce trial. In November of 1986, the parties separated. The judgment of divorce nisi was entered on July 12, 1988.

The judge made a number of orders relating to the custody of the children, child support, and property division. At issue here, however, is the judge's division of the proceeds of the personal injury suit. The judge first concluded that the husband's interest in the proceeds of the lawsuit was part of his divisible estate under G. L. c. 208, § 34.[2] The judge then assigned a portion of the husband's proceeds from the lawsuit to the wife. Specifically, the judge ordered that the wife was to retain her annuity and receive in addition $500,152 from

---

[2]For purposes of this case, G. L. c. 208, § 34 (1988 ed.), provides in relevant part: "Upon divorce or upon a complaint in an action brought at any time after a divorce . . . the court may assign to either husband or wife all or any part of the estate of the other."

We note that, by St. 1990, c. 467, the Legislature amended § 34 by striking its second sentence (quoted in part above) and inserting the following sentence: "In addition to or in lieu of a judgment to pay alimony, the court may assign to either husband or wife all or any part of the estate of the other, including but not limited to, all vested and nonvested benefits, rights and funds accrued during the marriage and which shall include, but not be limited to, retirement benefits, military retirement benefits if qualified under and to the extent provided by federal law, pension, profit-sharing, annuity, deferred compensation and insurance." This amendment is inapplicable for purposes of this appeal, and the parties do not argue that it is in any way relevant.

the joint investment account. The husband was to retain his annuity and $286,456 from the joint investment account. Any interest on the value of the joint investment account above its $716,141 value was to be divided 60%-40% between the husband and wife respectively.

Both parties moved to amend the judgment. The husband requested a reduction of the award to the wife. The wife pointed out (as had the husband) that the sums awarded the parties from the joint investment account together exceeded the stated principal balance in the account.

In response to these motions, the judge on September 21, 1988, issued a "corrected judgment," in which he amended the relevant provisions of the judgment so as to bring it in line with the correct total for the joint investment account. The judge also issued a "division of tort proceeds breakdown," in which he explained the conceptual underpinnings of the awards. In essence, the award to the wife (beyond her annuity) consisted of 40% of the joint investment account plus 40% of two-thirds of the present value of the husband's annuity, for a total of $500,152.[3] This sum was to come from the joint investment account. The invasion of the husband's annuity, in other words, was theoretical only, and the annuity was not to be disturbed in any way.

The husband appealed from the corrected judgment and division of tort proceeds. On November 3, 1988, the judge issued his findings of fact and conclusions of law, detailing his consideration of the factors enumerated in § 34. After discussing the factors, the judge concluded that the wife was entitled to the award memorialized in the corrected judg-

---

[3] The judge viewed the jury's award to the husband as compensating him for three distinct losses: past, present, and future pain and suffering; past, present, and future medical expenses; and past, present, and future loss of earning capacity. Therefore, to divide the annuity, the judge assumed that one third of its present value represented compensation for the husband's pain and suffering. The judge reasoned that the husband's pain and suffering was purely personal, and expressly refrained from assigning to the wife any part of this portion of the annuity. The remaining two thirds were assignable to the wife, the judge concluded, because she shared in the losses due to the husband's lost earning capacity and medical expenses.

ment. Both parties filed motions to amend the judge's findings of fact and conclusions of law. Both parties also moved for an amendment to the corrected judgment, the wife filing her motion on December 15, 1988.

After a hearing, the judge allowed both of the wife's motions. The judge issued amended findings of fact and conclusions of law, as well as an amendment to the corrected judgment. In essence, the judge recalculated the division of the proceeds from the personal injury suit (pursuant to a formula implicit in the corrected judgment) and awarded the wife — instead of her annuity plus $500,152 — her annuity plus $553,486. The judge indicated that the amendment to the corrected judgment was necessary "because of clerical error."

1. *Status of the husband's interest in the proceeds of the lawsuit.* During the trial, the wife offered as evidence a letter from a consulting actuary that stated the present cash value of the husband's and the wife's annuities. The parties stipulated that, if called to testify, the actuary would testify consistent with the contents of the letter. The husband objected to its admission, however, on the ground that the information it contained was irrelevant because his annuity was not part of his divisible estate under § 34. After a hearing, the judge admitted the letter, and, as noted above, he assigned to the wife a portion of the husband's annuity. Here, the husband renews his argument that the annuity was not an asset of his estate divisible under § 34.

We recently reaffirmed that "[t]he purpose of § 34 is to 'empower[ ] the courts to deal broadly with property and its equitable division incident to a divorce proceeding,' " and that the term "estate" as used in § 34 means "all property to which [a spouse] holds title . . . whenever and however acquired" (citations omitted). *Lauricella* v. *Lauricella, ante* 211, 213-214 (1991), quoting *Davidson* v. *Davidson*, 19 Mass. App. Ct. 364, 371 (1985), and *Rice* v. *Rice*, 372 Mass. 398, 400 (1977). Consistent with these principles, we have held that interests in lawsuits merely pending can be part of a party's divisible estate upon divorce. See *Lyons* v. *Lyons*,

403 Mass. 1003, 1003 (1988); *Hanify* v. *Hanify*, 403 Mass. 184, 186-190 (1988). Interests in retirement pensions also are within a spouse's assignable estate. See *Dewan* v. *Dewan*, 399 Mass. 754, 755-757 (1987).

Regarding the proceeds of personal injury suits, we recognized in *Hanify* that "[a] majority of jurisdictions that have considered the issue of legal damages recovered *during* marriage hold [that] such recoveries, at least to the extent of recovery for income lost and expenses added during marriage, constitute marital property" (emphasis in original). *Hanify* v. *Hanify*, *supra* at 189-190 & n.7. See *In re Marriage of Fjeldheim*, 676 P.2d 1234, 1236 (Colo. Ct. App. 1983); *Campbell* v. *Campbell*, 255 Ga. 461, 462 (1986); *In re Marriage of Powell*, 13 Kan. App. 2d 174, 176-180 (1988); *Gonzalez* v. *Gonzalez*, 689 S.W.2d 383, 385-386 (Mo. Ct. App. 1985); *Johnson* v. *Johnson*, 317 N.C. 437, 445-454 (1986); *Platek* v. *Platek*, 309 Pa. Super. 16, 21-23 (1982); *Bero* v. *Bero*, 134 Vt. 533, 535 (1976); *In re Marriage of Mack*, 108 Wis. 2d 604, 607-609 (1982) (construing Wisconsin statute since repealed).

Moreover, three courts have drawn the same conclusion even though, as in this case, some of the proceeds from the personal injury suits had been in the form of annuities. See *Bandow* v. *Bandow*, 794 P.2d 1346, 1347-1350 (Alaska 1990) (holding that at least part of annuity given in settlement was divisible; remanded for reapportionment); *Zimmer* v. *Zimmer*, 770 S.W.2d 514, 515 (Mo. Ct. App. 1989); *In re Marriage of Burt*, 144 Ill. App. 3d 177, 183 (1986). Two other courts have assumed that an annuity benefiting a party to a divorce is at least in part subject to division. See *Johnson* v. *Johnson*, 259 Ga. 658, 661 (1989) (to be allocated by the finder of fact); *Richmond* v. *Richmond*, 144 A.D.2d 549 (N.Y. 1988). See also *Sedwick* v. *Sedwick*, 446 N.E.2d 8, 10 (Ind. Ct. App. 1983) (annuity payable to attorney husband for his representation of personal injury claimant subject to equitable division of assets).

The husband argues, however, that we should distinguish between disability annuities and retirement pensions and

conclude that the former are not part of a spouse's divisible estate for purposes of § 34. The husband relies in this regard on Florida precedents holding that, while benefits received as compensation for pain, suffering, disability, disfigurement, and loss of consortium are not subject to equitable distribution, benefits received as compensation for economic losses like lost wages, lost earning capacity, and medical expenses are divisible marital assets. See *Brogdon* v. *Brogdon*, 530 So. 2d 1064, 1065-1066 (Fla. Dist. Ct. App. 1988); *Weisfeld* v. *Weisfeld*, 513 So. 2d 1278, 1280-1282 (Fla. Dist. Ct. App. 1987), aff'd, 545 So. 2d 1341, 1346 (Fla. 1989); *Freeman* v. *Freeman*, 468 So. 2d 326, 328 (Fla. Dist. Ct. App. 1985). We are not inclined to follow the distinctions in these Florida cases, which, in any event, have no application to what the judge did here.

The husband also contends that, by using his proceeds from the lawsuit to purchase an annuity, he effectively transformed a capital asset into a source of income, and that, although this source of income may be the basis of an alimony or child support order, it is not part of his divisible estate. To hold otherwise, the argument goes, is to give the wife the benefit of a double recovery from a single resource. For two reasons, this argument also is unpersuasive.

First, as noted above, the husband's proceeds from the personal injury suit undeniably would have been part of his divisible estate had he not exchanged them for an annuity. The character of the proceeds as property within his § 34 assignable estate does not change simply because he used them to purchase an annuity. A contrary conclusion could encourage spouses anticipating divorce to purchase annuities with their capital assets in order to insulate them from equitable division.

Second, the judge assigned to the wife a portion of the proceeds of the personal injury suit that had been exchanged for the annuity. The husband retained sole possession of the remaining proceeds, which were substantial. At the same time, the judge ordered the husband to pay child support in an amount that represents only a small fraction of the husband's

remaining assets (in the form of the annuity and the investment fund). Thus, the judge assigned to the wife part of the husband's interest in the lawsuit proceeds, and then in effect based the child support order on the remaining proceeds.

It does not follow from the fact that the husband can and probably will satisfy his child support obligation from part of the income received through his annuity that the remainder of the annuity is outside of the husband's assignable estate. So long as it is possible (as it is in this case) to identify separate portions of a given asset of a divorcing spouse as the separate bases of the property assignment and any alimony or support obligations (thus avoiding redistribution by an alimony or support order of specific assets that already have been equitably assigned), there is nothing improper about including a particular asset within a spouse's assignable estate, assigning part of it, and then counting its remainder for alimony or child support purposes. See *Neubauer* v. *Neubauer*, 433 N.W.2d 456, 461 (Minn. Ct. App. 1988) ("[T]o the extent [a] pension is not awarded as property, it may . . . be considered as income and [could] be a factor in making a maintenance obligation determination"). See also 2 Valuation and Distribution of Marital Property § 23.05[2][d] (J.P. McCahey ed. 1988). The wife receives no more of an improper double benefit in a case such as this than she does when, for example, she benefits from an alimony or child support order based on her former spouse's employment income, and in addition is assigned the marital home.

The husband's final argument in this regard is that, if nothing else, the judge erred in including within the husband's divisible estate so much of the lawsuit proceeds as compensated the husband for his future loss of earning capacity and his future medical expenses, because those proceeds represent compensation for events theoretically occurring after the divorce. The husband asks us to follow certain other States that have considered this question and hold that

only those proceeds compensating the husband for losses occurring before the divorce can be assigned to the wife.[4]

We decline to do so. To begin with, the proceeds received by the husband here were received during the course of the marital partnership and — because the jury returned a general verdict — the exact amounts intended as compensation for each element of damages are unquantifiable. Therefore, the proceeds here are unlike the kind of "after-acquired" property that does fall outside of a spouse's divisible estate. See *Davidson* v. *Davidson*, 19 Mass. App. Ct. 364, 368-375 (1985). Cf. *Savides* v. *Savides*, 400 Mass. 250, 251-253 (1987). Moreover, in the analogous area of pension benefits, it is clear that — in appropriate circumstances, and under the version of § 34 applicable to this case, see note 2, *supra* — a judge does not err in including within a spouse's assignable estate a percentage of the spouse's future pension benefits, even if that percentage includes benefits that are not specifically attributable to the period of the marriage. See *Johnson* v. *Johnson*, 22 Mass. App. Ct. 955, 956-957 (1986). Compare *Peterson* v. *Peterson*, 30 Mass. App. Ct. 932, 933 (1991).

Accordingly, we hold that the proceeds of the husband's personal injury suit, at least to the extent of recovery for loss of earning capacity and medical expenses, and including the annuity, are within his divisible estate under § 34. The judge did not err in admitting actuarial evidence of the present value of the annuity, or in including it within the husband's assignable estate.

2. *Property division.* The husband also claims that the judge erred in dividing the proceeds of the personal injury suit. Specifically, the husband argues that the division of the proceeds from the lawsuit was plainly wrong because: (1) the

---

[4]In his brief, the husband argues that the judge's division of the marital estate was plainly wrong because he assigned to the wife proceeds of the lawsuit that covered the husband's post-divorce losses. See part 2 (b) of this opinion, *infra*. Because the essence of this argument is that the judge erred in including these assets in the husband's divisible estate, we discuss it here.

judge arbitrarily decided that one-third of the annuity was meant to compensate him for pain and suffering; and (2) the judge wrongly assigned to the wife portions of the lawsuit proceeds that were to compensate him for losses that post-dated the divorce: future medical expenses, future lost wages, and future loss of earning capacity.

Under G. L. c. 208, § 34, judges possess broad discretion to divide marital property equitably. See *Pare* v. *Pare, ante* 292, 296 (1991). In reviewing a judgment pursuant to § 34, we look for express findings confirming that all relevant factors in § 34 were considered by the judge. See *Rice* v. *Rice,* 372 Mass. 398, 402-403 (1977). We also determine whether the reasons for the judge's conclusions are apparent in his findings and rulings. See *Bowring* v. *Reid,* 399 Mass. 265, 267 (1987). We will not reverse the judge's conclusion unless it is "plainly wrong and excessive." *Redding* v. *Redding,* 398 Mass. 102, 107 (1986). With these principles in mind, we turn to the husband's contentions.

(a) *Designation of one-third of lawsuit proceeds as compensation for pain and suffering.* Because the jury in the personal injury lawsuit returned a general verdict, neither the parties nor the judge could know exactly how the jury calculated their award or exactly how much of the total award was meant to compensate the husband for his pain and suffering. After considering all of the § 34 factors, the judge concluded that one-third of the award was for the husband's pain and suffering, while the remaining two-thirds were for medical expenses and lost earning capacity. In the circumstances, we cannot say that this assumption was plainly wrong and excessive.

"No specific formula need be followed to fashion an equitable judgment [under § 34]." *Robbins* v. *Robbins,* 16 Mass. App. Ct. 576, 578 (1983). Although unavoidably imprecise, the formula that the judge used here to divide the lawsuit proceeds was not unreasonable. There were three component parts to the husband's damages, none of which was readily quantifiable. In this context, the judge reasonably decided that one-third of the jury's award was intended to cover one

of those components. The judge could have apportioned the proceeds differently, but this does not mean that he abused his discretion. Cf. *Bacon* v. *Bacon*, 26 Mass. App. Ct. 117, 122 (1988) (Kaplan, J., concurring); *Caldwell* v. *Caldwell*, 17 Mass. App. Ct. 1032, 1034 (1984), quoting *Downing* v. *Downing*, 12 Mass. App. Ct. 968, 969 (1981) ("Division of [§ 34 assets] need not proceed on any precise mathematical formula, but should be an honest exercise of judicial discretion"). There was no abuse of discretion.

(b) *Assignment of lawsuit proceeds covering future losses.* The husband also challenges the judge's division of the lawsuit proceeds to the extent that the wife received a share of the husband's compensation for future lost wages, future loss of earning capacity, and future medical expenses. We concluded above that these proceeds are part of the husband's assignable estate. However, there is another point related to this issue that bears further discussion at this point.

Although we have concluded that, in the circumstances of this case, the proceeds of the lawsuit covering the husband's future loss of earning capacity and future medical expenses are within his divisible estate, we agree with the general point of the husband's argument that the fact that some of the lawsuit proceeds were to compensate him for losses theoretically occurring long after the marital partnership has ended, losses that in no way will be shared by the wife, is not an entirely irrelevant consideration. Although the compensation to the husband for his future losses is unlike the "after-acquired" personalty and money received by the husband in *Davidson* v. *Davidson*, 19 Mass. App. Ct. 364 (1985), the fact that the wife does not share in some of the husband's future losses should nevertheless be taken into account by judges when dividing assets in a divorce proceeding. Therefore, in future cases in which this issue is raised, judges should indicate for the record that they have considered this fact and that it has entered into their division of the marital assets.

In this case, the judge did recognize the importance of this factor and he did expressly consider it as he divided the pro-

ceeds of the lawsuit. After detailing his consideration of both the mandatory and optional factors in § 34, the judge included a detailed discussion of his "division of [the] tort proceeds." In the course of this discussion, the judge acknowledged that a portion of the lawsuit proceeds were for the husband's future losses. The judge then awarded to the wife only 40% of the portion of the proceeds that he considered as encompassing the husband's past, present, and future medical expenses and past, present, and future loss of earning capacity. Thus, the judge effectively reduced the award to the wife in recognition of the fact that a portion of the lawsuit proceeds were to cover post-divorce losses experienced only by the husband. There was no abuse of discretion in this determination.[5]

3. *Amendment of the corrected judgment.* Less than one year after the judge issued the corrected judgment and his findings of fact and conclusions of law, the wife moved for an amendment to the corrected judgment pursuant to Mass. R. Dom. Rel. P. 59 (e) and 60 (b) (1991). The judge allowed this motion, purporting to act pursuant to both rules. The husband asserts that this was an abuse of discretion.

The judge was powerless to act under rule 59 (e), because the wife did not file her motion within ten days after the entry of the judgment. Therefore, we consider whether the judge abused his discretion in acting pursuant to rule 60 (b) (1), which authorizes judges to grant relief to correct mistakes and upon motion made within one year of the judgment.[6]

---

[5]In analyzing this issue, certain other States have employed the so-called "analytic" approach. See generally 2 Valuation and Distribution of Marital Property § 23.08[1][b] (J.P. McCahey ed. 1988). The husband urges us to adopt this approach for Massachusetts. As the foregoing discussion implies, we see no reason to do so. In our view, judges can better respond to "the myriad of different fact situations which surround divorces" (*Lauricella v. Lauricella, ante* 211, 214 [1991], quoting *Davidson* v. *Davidson, supra* at 371), if unconstrained by rigid analytical formulas.

[6]Referring to the statement in the judge's order that the amendment was necessary because of "clerical error," the husband argues that the judge in fact acted pursuant to Mass. R. Dom. Rel. P. 60 (a) (1991), and

"A motion brought under rule 60 (b) is addressed to the discretion of the judge. . . . Such a decision 'will not be reversed on appeal save for abuse.' " *Bird* v. *Ross*, 393 Mass. 789, 791 (1985), quoting *Parrell* v. *Keenan*, 389 Mass. 809, 815 (1983). The judge here rectified a mistake in his division of the assets from the joint investment account by recalculating the division so as to make it logically consistent with his prior decision to award the husband all of the proceeds assumed to compensate him for his pain and suffering and the wife all of the proceeds assumed to compensate her for her loss of consortium. The amendment therefore had the effect of making the division of the proceeds from the lawsuit more completely internally consistent. It was well within the judge's discretion to take this action.

The corrected judgment as amended is affirmed. The wife is to have the costs of this appeal, including reasonable attorney's fees, as may be determined by the Probate Court judge. The judge also should make provision for division of interest on the joint account since the time of the original judgment in accordance with the percentages established in the corrected judgment as amended.

*So ordered.*

---

that his decision should be evaluated on this footing. We disagree. The wife requested relief under rule 60 (b), and the judge expressly acted pursuant to that rule. Unlike rule 60 (a), rule 60 (b) authorizes judges to grant substantive relief from judgments, see *Chavoor* v. *Lewis*, 383 Mass. 801, 803 (1981), and the amendment here — by adjusting the wife's recovery upward by over $50,000 — clearly effected substantive relief. Accordingly, we treat the judge's decision as based on rule 60 (b).