## JOYCE CHAMPION vs. GARY CHAMPION.

No. 98-P-808.

Essex. January 16, 2001. - March 19, 2002.

Present: PERRETTA, KAPLAN, & GELINAS, JJ.

*Divorce and Separation,* Division of property, Modification of judgment. *Value.*

In a divorce proceeding in which the judge assigned a value to the husband's sole proprietorship based on the husband's expert's determining the amount of assets left after subtracting liabilities, the judge's finding that the expert was credible and accepting his opinion on valuation was not clearly erroneous. [217-219]

In a divorce proceeding, the judge did not err in using the cash method of accounting, rather than the accrual method, to determine the amount of the husband's annual income. [219]

This court declined to redistribute the marital assets awarded in a divorce proceeding on the basis of the husband's claim that his former wife would receive an improper double benefit in being awarded property in an equitable distribution of marital assets that was then also considered as a source of income for purposes of imposing support obligations unless his business was determined to have no value and a promissory note awarded the wife was eliminated, where such a redistribution would produce an inequitable result contrary to the mandate of G. L. c. 208, § 34. [219-222]

Based upon the evidence presented on a complaint for modification of an amended judgment for divorce, upon the findings of the judge that since the net weekly income of the wife exceeded her weekly expenses by about sixteen dollars, she had failed to show a change in circumstances sufficient to justify an upward modification of the alimony order set out in the amended judgment, and upon the judge's broad range of discretion, this court concluded that the judge's decision on the complaint for modification was to stand. [222-223]

COMPLAINT for divorce filed in the Essex Division of the Probate and Family Court Department on April 25, 1996.

The case was heard by *Edward J. Rockett,* J., and a complaint for modification, filed on November 4, 1997, was also heard by him.

*Stephen C. Maloney* for Gary Champion.

*David W. Rifkin* for Joyce Champion.

PERRETTA, J. This matter comes to us on cross appeals from an amended judgment of divorce nisi and an amended judgment on a complaint for modification. Both parties assert that the trial judge erred in his valuation of the sole proprietorship of the former husband (Gary), and in determining the amount of support awarded the former wife (Joyce). We affirm the judgments.

1. *The amended judgment of divorce.* We recite the facts found by the judge that are relevant to the division of the parties' assets and the order for alimony and child support. The evidence will be related where necessary to the discussion of the various issues.

Married in 1978, the parties separated in 1995. They have shared custody of their only child, a son born in 1983, since the time of their separation. At the time of their divorce, Gary was forty-eight years of age, in good health, and operated his own telecommunications business, Champion Resources. Joyce is two years younger than Gary. She had worked as a bookkeeper for Champion Resources but was unemployed at the time of the divorce. Notwithstanding her health problems,[1] the judge found that she was able to work twenty to twenty-five hours a week.

Finding that Joyce had less opportunity than Gary to acquire future capital assets and income, the judge awarded her fifty-three percent of the marital estate. The assets were valued and assigned as follows. Gary was awarded the marital home and assumed its mortgage ($81,514 equity); received sole ownership of Champion Resources ($54,000), his boat ($10,000), and his 1991 car ($8,500); and gave a secured four year, four percent note payable to Joyce ($26,523.68) for total net assets of $127,490.32. Joyce was assigned the parties' condominium and assumed its mortgage ($39,732 equity); received sole ownership of their individual retirement accounts ($76,010), and her 1985 car ($1,500); and held the aforementioned note from Gary for total net assets of $143,765.68. The judge also ordered that Gary pay Joyce $656 a week for her support ($328) and that of their child ($328).

---

[1] At the trial on the divorce complaint, Joyce claimed that she was totally disabled due to lower back pain when she either stood or sat for extended periods of time. Subsequent to trial, the Social Security Administration found her to be totally disabled.

2. *Value of the sole proprietorship.* There was evidence to show that Gary, as owner and operator of Champion Resources, sold and installed new and used telecommunication equipment. His expert witness, a business appraiser and accountant, opined that Champion Resources had a value of $54,000. He arrived at that figure by subtracting the business's liabilities from its inventory and receivables and making certain minor adjustments.[2] The expert stated that he did not value the goodwill of Champion Resources because, in his opinion, any goodwill was personal to Gary and could not be transferred.[3] The judge accepted the testimony of Gary's expert witness and put a value of $54,000 on Champion Resources.

Gary does not dispute the obvious fact that Champion Resources was a sole proprietorship. See, e.g., *Ladd* v. *Scudder Kemper Invs., Inc.,* 433 Mass. 240, 243 (2001). Instead, he claims that because Champion Resources was worth more to him as a stream of income rather than any amount for which he might have sold the business, he would not willingly sell Champion Resources no matter the sale price it might fetch.[4] It is on this basis that he insists that Champion Resources should

[2] The expert testified that six sevenths of the business's assets consisted of accounts receivable with the remaining seventh attributed to inventory.

[3] As explained by Gary's expert witness, the term "goodwill" meant the "excess earning power of a business over and above what would be an expected rate of return to the owner, either as an active participant or as a passive investor." According to the expert witness, any goodwill generated by Champion Resources was personal to Gary, the owner, and would not be transferable to any potential successors in ownership. There is support for the expert's distinction between "enterprise goodwill" and "personal goodwill" and the decision not to assign value to the latter. See generally 2 Budd & Zupcofska, Massachusetts Divorce Law Practice Manual § 14.4, at 14.41 (MCLE 2000).

[4] Gary's expert also testified that Champion Resources was worth more to Gary as an income stream than as equity and that, therefore, Gary would not be a willing seller. The willing buyer/willing seller test is frequently described as the "price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." 2 McCahey, Valuation and Distribution of Marital Property § 24.02[1][a], at 24-7 (2001) (internal quotation marks, footnote omitted). The expert also testified that he would not recommend that a hypothetical buyer purchase the receivables of the business.

have been valued as worthless for purposes of valuing and distributing the marital assets.

Whether a business takes the form of a corporation, partnership, or sole proprietorship does not affect the valuation method that a court may use even though some methods may better lend themselves to particular types of business associations. See 2 McCahey, Valuation and Distribution of Marital Property § 22.08, at 22-102, 22-103 (2001). The willing buyer/willing seller test is used to determine the fair market value of a sole proprietorship for Federal estate and gift tax purposes, see *id.* at § 24.07[2], and the guidelines established for such purposes are relevant in divorce litigation.[5] See 2 Budd & Zupcofska, Massachusetts Divorce Law Practice Manual § 14.4, at 14-23 (MCLE 2000). In the absence of a determinable market value, experts commonly value a closely held business by the assignment of value to the assets of the business, as was done here (inventory and receivables less liabilities), and by the capitalization of earnings. See Kindregan & Inker, Family Law & Practice § 45.8, at 275 (2d ed. 1996).

In assigning a value to Champion Resources, the judge found Gary's expert credible and accepted his opinion which was based upon the amount of assets left after subtracting liabilities. His finding is not clearly erroneous, and we are bound by it. See *Sarrouf* v. *New England Patriots Football Club, Inc.*, 397 Mass. 542, 550 (1986) ("[v]aluation is a question of fact, and we will not disturb a judge's determination unless it is clearly erroneous"); *Fechtor* v. *Fechtor*, 26 Mass. App. Ct. 859, 863

---

[5]For example, Rev. Rul. 59-60 C.B. 1959-1, § 4[a]-[h] at 238-239, promulgated to aid valuations for estate and gift tax purposes, enumerates eight factors a court may rely upon to calculate the fair market value of stock in a closely held corporation: (1) the nature of the business and the history of the enterprise; (2) the economic forecast for the industry and in general; (3) book value of the stock and the financial condition of the business; (4) earning capacity; (5) dividend-paying capacity; (6) existence of goodwill or other intangible value; (7) stock sales and size of the block to be valued; and (8) market price of publicly traded stock of similar businesses. See Valuation and Distribution of Marital Property § 22.08[2][a], at 22-110, 22-111. See also Kindregan & Inker, Family Law & Practice § 45.8, at 275 (2d ed. 1996). As acknowledged by Gary's expert, some of these factors were inapplicable to his valuation of the business in issue. See, e.g., *Ladd* v. *Scudder Kemper Invs., Inc.*, 433 Mass. at 243-244 (a "corporation, by definition, is not a form of 'sole proprietorship' ").

(1989) ("[u]nless clearly erroneous, the trial judge's determination of value will stand").

3. *Income from the business.* On her cross appeal, Joyce claims that the judge erroneously used the cash basis method of accounting to determine that Gary's annual income was about $102,000.[6] She argues that the accrual method should have been used and Gary's yearly income found to be $131,000.

Certain methods of accounting are more suitable for certain types of businesses. So long as Internal Revenue Service requirements are met, a business generally may use the method most appropriate for its needs. See Valuation and Distribution of Marital Property § 22.04[1][a], at 22-35. "The cash basis is the most commonly used accounting method, especially by individuals, sole proprietors, partnerships and certain service businesses." *Id.* at § 22.04[1][i], at 22-36.

There was evidence to show that Gary used the accrual method in maintaining Champion Resources' books but reported his income on a cash basis. However, his expert witness, found credible by the judge, testified that this practice was neither wrong nor illegal. Although Joyce's witness, an accountant who failed to qualify as an expert witness, related that Internal Revenue Service regulations may have required Gary to use the more complicated and time-consuming accrual method to compute his taxes,[7] he nonetheless conceded that he would have advised Gary to report his income on a cash basis.

Again, we accept the judge's determination. See *Sarrouf* v. *New England Patriots Football Club*, 397 Mass. at 550; *Fechtor* v. *Fechtor*, 26 Mass. App. Ct. at 863.

4. *"Double dipping."* Commentators use the phrase "double dipping" to describe the seeming injustice that occurs when property is awarded to one spouse in an equitable distribution of marital assets and is then also considered as a source of income for purposes of imposing support obligations. See

[6]The judge arrived at this amount by averaging Gary's Schedule C earnings for 1994, 1995, and 1996, and adding $696 for unspecified "fringe benefits."

[7]The Internal Revenue Service requires businesses that derive significant income from inventory to use the accrual basis method of accounting. See Valuation and Distribution of Marital Property § 22.04[1], at 22-36, 22-37, citing 26 C.F.R. § 1.446-1(c)(2) (2001).

"Double Dipping," 7 Equit. Dist. J. 73, 73-77 (National Legal Research Group, Inc., July 1990); and authorities therein cited. See also Valuation and Distribution of Marital Property § 23.05[2][d], at 23-96; and authorities therein cited.[8]

Relying upon the fact that the value of Champion Resources was based in significant measure on the accounts receivable of the business, see note 2, *supra,* which will cease to exist upon collection and will be converted into a stream of income, Gary claims that Joyce erroneously received "an improper double benefit." *Dalessio* v. *Dalessio,* 409 Mass. 821, 828 (1991). According to Gary, the judge's decision constitutes a "redistribution through alimony and child support [orders] of assets already assigned." He claims that Joyce will receive an improper double benefit unless we conclude that the value of Champion Resources was nil, eliminate the promissory note awarded Joyce, and redistribute the assets of the marital estate.

Although the circumstances presented in *Dalessio* are quite different from those in the instant case, we think that decision instructive. In *Dalessio,* the husband had been awarded a multi-million dollar settlement in a personal injury lawsuit that resulted in a lump-sum payment as well as a monthly annuity payment throughout his life. The wife also received a lump-sum payment and monthly annuity payments on her loss of consortium claim. The husband and wife then pooled their lump-sum payments and invested them in a joint investment account.

Upon the parties' divorce, a Probate Court judge awarded the wife her annuity, a percentage of the present value of the husband's annuity, and a percentage of the joint investment account funded by the parties' lump-sum settlement payments. On appeal, the husband claimed that the wife had received the "benefit of a double recovery from a single resource." *Dalessio* v. *Dalessio,* 409 Mass. at 827. He argued that because his annuity was purchased with funds from the settlement received in his civil suit, he had "effectively transformed a capital asset into a source of income," which could serve as a basis for a support order but could not also be "part of his divisible estate."

---

[8]The cases and authorities cited in these two works show that there is a split among jurisdictions on the issues of what constitutes "double-dipping" and whether it ought to be prohibited as a matter of law.

*Ibid.* In rejecting the husband's argument, the court stated, at 828:

> "So long as it is possible (as it is in this case) to identify separate portions of a given asset of a divorcing spouse as the separate bases of the property assignment and any alimony or support obligations (thus avoiding redistribution by an alimony or support order of specific assets that already have been equitably assigned), there is nothing improper about including a particular asset within a spouse's assignable estate, assigning part of it, and then counting its remainder for alimony or child support purposes." (Emphasis added.)

Gary's reliance upon *Dalessio* is misplaced. In the first instance, we see nothing in *Dalessio* that can be construed as support for the proposition that an "improper double benefit" exists whenever income produced by an asset included in a party's equitable share of the marital estate is considered in determining the need for or the ability to pay support orders. See Family Law & Practice § 41.21, at 101.

Moreover, Gary's claim of "double dipping" fails to take into account the facts that the support orders were based on his income which was determined from his tax returns for three previous years, see note 6, *supra*, and his future earnings were not considered, see note 2, *supra*, in establishing the value of Champion Resources. See Valuation and Distribution of Marital Property § 22.01[2][c], at 22-8 ("[i]n valuing a sole proprietorship, a distinction must be made between the proprietor[']s own future earning capacity and the value of the business itself").

Nor does Gary's argument take into account the fact that as the receivables are being collected and converted into a stream of income, they are being replaced with new receivables. Consequently, neither the value of the sole proprietorship nor Gary's ability to earn income is diminished by treating the business as a marital asset as well as a source of income by which Gary can meet his support obligations. See, e.g., *In re Marriage of Baumgartner and Baumgartner*, 95 Or. App. 723, 725 (1989); *Smith* v. *Smith*, 836 S.W.2d 688, 692 (Tex. App. 1992). These facts lead us to conclude that the trial judge was able "to identify separate portions of a given asset . . . as the separate

bases of the property assignment and . . . support obligations."
*Dalessio* v. *Dalessio,* 409 Mass. at 828.

Even were we to conclude that the trial judge had given
Joyce a "double benefit," we would conclude that to have done
otherwise would have resulted in an inequity. See "Double Dip-
ping," 7 Equit. Dist. J. at 74 ("[a]n absolute bar against double
counting can occasionally create inequities, particularly where
the financial situations of two parties become disparate"). There
is nothing in *Dalessio, supra,* or G. L. c. 208, § 34, that
prohibits "double dipping" as matter of law. Compare *Kruschel*
v. *Kruschel,* 419 N.W.2d 119 (Minn. Ct. App. 1988); *Balven* v.
*Balven,* 734 S.W.2d 909 (Mo. Ct. App. 1987); *Innes* v. *Innes,*
117 N.J. 496 (1990). That being so, we look to the equities of
the situation.

As found by the trial judge at the time of the divorce, Joyce
was able to work no more than twenty to twenty-five hours a
week. On the other hand, Gary's annual income exceeded
$100,000. For us to redistribute the marital assets in accordance
with Gary's request, that is, to conclude that Champion
Resources had no value and to vacate the order that he pay
Joyce $26,500, would produce an inequitable result, that is, a
result contrary to the mandate of G. L. c. 208, § 34. Accord-
ingly, we refuse so to do and, instead, conclude that there is no
basis for disturbing the amended judgment of divorce.

5. *Modification of the support orders.* Subsequent to the
amended judgment of divorce, the Social Security Administra-
tion found Joyce to be totally disabled and eligible for benefits
as of June, 1999. See note 1, *supra.* Based upon this ruling,
Joyce sought a modification of the judgment in issue. She sought
more support than that provided for in the amended judgment
of divorce as well as an elimination of the provision therein
recited that she make six weekly applications for employment.

Although the trial judge modified the amended judgment of
divorce to the extent that he eliminated the requirement that
Joyce seek employment opportunities, he concluded that she
had not shown a need for increased support from Gary. His
conclusion was based upon his findings that Joyce's weekly
expenses had decreased in a weekly amount of about seventy-
nine dollars, that is, her weekly expenses had decreased from

$794 to $715. This decreased amount was due, in part, to Joyce's refinancing of the mortgage on the condominium awarded to her pursuant to the amended judgment of divorce. On the other hand, her net weekly income, including her support and Social Security disability benefits less State and Federal taxes, was $731.[9]

Each of the findings upon which the trial judge based his mathematical calculations was supported by Joyce's testimony. Those findings led him to conclude that because Joyce's net weekly income exceeded her weekly expenses by about sixteen dollars, she had failed to show a change in circumstances sufficient to justify an upward modification of the alimony order set out in the amended judgment.

In considering Joyce's argument on appeal, we are mindful of our standard of review. As stated in *Heistand* v. *Heistand*, 384 Mass. 20, 26-27 (1981):

> "In the interests of finality this court has conditioned modification upon a demonstrated change in circumstances after entry of the original decree. *Robbins* v. *Robbins*, 343 Mass. 247, 249 (1961). The determination of the extent and palpability of such change, however, lies in large measure within the discretion of the trial judge. See *Buchanan* v. *Buchanan*, 353 Mass. 351, 352 (1967)."

See also *Bush* v. *Bush*, 402 Mass. 406, 411 (1988); *Keller* v. *O'Brien*, 420 Mass. 820, 828 (1995).

Although we might not have reached the same conclusion as the trial judge were the matter ours to decide in the first instance, it is not. Based upon the evidence, the findings, and the trial judge's broad range of discretion, we must conclude that his decisions on the complaint for modification and the parties' request for counsel fees are to stand.

The parties' requests for fees and costs of the appeal are denied.

*Judgments and orders affirmed.*

---

[9]The trial judge also found that there was no substantial change in Gary's yearly income since the time of the divorce.