NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-1177                                          Appeals Court

WEST LUDWIG vs. CHERYL LAMEE-LUDWIG.[1]

No. 15-P-1177.

Norfolk.     October 17, 2016. - February 7, 2017.

Present:  Wolohojian, Carhart, & Shin, JJ.

Divorce and Separation, Alimony.

Complaint for divorce filed in the Norfolk Division of the
Probate and Family Court Department on June 20, 2012.

The case was heard by John D. Casey, J.

Elaine M. Epstein for the husband.
Paul M. Kane (Joan E. Kolligian also present) for the wife.

SHIN, J.  We address in this case whether the calculation

of an employee spouse's alimony obligation may include income

received from unvested employee stock options[2] that were not

_____

[1] The wife resumed her maiden name, Cheryl Lamee, after the
filing of the complaint in this case.

[2] Technically, the instruments in question in this case are
"performance options," but the parties agree that they function
like stock options, and we will refer to them as such.

subject to equitable division after application of the "time rule" set out in Baccanti v. Morton, 434 Mass. 787 (2001). The trial judge concluded that it would not constitute double counting if such income were included in determining the husband's alimony obligation to the wife, and the husband appeals. He also appeals the judge's determination of the date on which the unvested options should be valued under the time rule. Discerning no error in the judge's resolution of either question, we affirm.

Background. After twenty years of marriage, the parties separated and began living apart in April of 2012. The husband filed a complaint for divorce later that year. When attempts at reconciliation failed, the wife filed a counterclaim for divorce in July of 2013.

On August 19, 2014, the parties entered into a separation agreement, which resolved all issues in the case except the two identified above. The same day, the trial judge entered a judgment of divorce nisi approving and incorporating the separation agreement.[3] As to the two contested issues, the parties filed a stipulation agreeing to submit them to the judge for determination solely "on representation of counsel."

---

[3] Neither party appeals from the original judgment of divorce.

The judge held a nonevidentiary hearing on the contested issues later that day. He then entered a supplemental judgment of divorce nisi dated October 1, 2014, concluding that the alimony provisions of the separation agreement should be applied to income the husband realizes from unvested stock options that were not subject to the equitable division of marital assets,[4] and that the unvested options should be valued on a date closest in time to entry of the original divorce judgment. This appeal followed.

Discussion. 1. Inclusion of income from unvested stock options in determining the husband's alimony obligation. The first disputed issue concerns the treatment of income from unvested stock options awarded to the husband by his then-employer, Fidelity Investments. Under the separation agreement, the wife's beneficial ownership interest in the unvested options was calculated in accordance with the time rule set forth in Baccanti, 434 Mass. at 801 & n.10. The time rule is a formula used to determine what portion of an employee spouse's unvested stock options may be equitably divided (because they were awarded for services rendered before or during the marriage) and what portion should be assigned exclusively to the employee

---

[4] The alimony provisions of the separation agreement require the husband to pay a percentage of his annual base salary, plus "additional alimony" calculated by applying a sliding-scale percentage to "bonuses and other forms of compensation."

spouse (because they were awarded for services to be performed after dissolution of the marriage).[5] Id. at 799-801.[6]  In this case the husband retained an expert who applied the time rule and determined the number of unvested shares attributable to the marital partnership and available for equitable division.[7]  As to those shares, pursuant to the parties' agreement, the wife received a fifty percent beneficial ownership interest.

The issue that the parties submitted to the trial judge concerned the shares that were not equitably divided, i.e., those that were not treated as divisible marital property after application of the time rule.  Specifically, the parties disagreed on whether any income the husband later realizes from the contested shares should be included in determining his alimony obligation to the wife.  The judge resolved this dispute

---

[5] There are exceptions to this general principle, which are not pertinent here.  For example, options awarded for services to be performed after dissolution of the marriage can still be equitably divided if the marital partnership played a role in creating the conditions that warranted the award.  See Baccanti, 434 Mass. at 799 nn.6, 7; 800 n.9; 801 n.11.

[6] Under the time rule, the number of unvested options available for equitable division is calculated by multiplying the total number of unvested options by "a fraction whose numerator represents the length of time that the employee owned the options prior to dissolution of the marriage . . . and whose denominator represents the time between the date the options were issued and the date on which they are scheduled to vest." Baccanti, 434 Mass. at 801.

[7] The wife agreed that the expert's calculations were accurate.

in the wife's favor, rejecting the husband's arguments that including the income would constitute "double dipping," and violate the Alimony Reform Act, G. L. c. 208, § 53(c)(1).  We discern no abuse of discretion in this ruling.  See Heins v. Ledis, 422 Mass. 477, 480-481 (1996) ("A judge has broad discretion when awarding alimony and dividing marital assets").

This case does not present a situation of "double dipping." "Double dipping" refers to "the seeming injustice that occurs when property is awarded to one spouse in an equitable distribution of marital assets and is then also considered as a source of income for purposes of imposing support obligations." Champion v. Champion, 54 Mass. App. Ct. 215, 219 (2002).  Here, there is no such injustice because the contested shares were not part of the equitable distribution of assets; by operation of the time rule, they were assigned to and retained by the husband outright.  See Baccanti, 434 Mass. at 799-801.

The husband concedes, as he must, that the contested shares "were not subject to equitable division."  Still, he argues that the trial judge should not have considered them in determining his alimony obligation because Baccanti deems unvested options not divided under the time rule to "belong solely to the employee spouse."  Id. at 801 n.10.  Baccanti addressed only property division, however, not alimony.  Certainly, for purposes of property division, the husband retained sole

ownership of the shares that were not attributed to the divisible marital estate by application of the time rule. But that is precisely why there is no "double dipping": as the judge properly concluded, because those shares were not part of the division of marital assets, they could be considered a source of income for purposes of alimony.[8] This result is consistent with our decision in Wooters v. Wooters, 74 Mass. App. Ct. 839, 842-843 (2009), in which we held that income from employee stock options awarded after entry of the divorce judgment counted as "gross employment income" within the meaning of the judgment's alimony provisions. We see no reason why the same treatment cannot apply to stock options that are retained solely by the employee spouse under the time rule because they "were given for future services to be performed after dissolution of the marriage." Baccanti, 434 Mass. at 800.

Moreover, even assuming for argument's sake that this case implicates double counting, the judge's determination still would not constitute an abuse of discretion. While disfavored, double counting is not prohibited as a matter of law. See Champion, 54 Mass. App. Ct. at 222. The trial judge must look to the equities of each situation, and we will not "disturb [a

---

[8] In contrast, it would be "double dipping" for the calculation of the husband's alimony obligation to include his income from the shares as to which the wife already received a fifty percent beneficial ownership interest. The parties agreed, however, that any such income would be excluded.

judge's determination] for inequitable 'double dipping' where it is possible to 'identify separate portions of a given asset of a divorcing spouse as the separate bases of the property assignment and any alimony or support obligations.'" Adams v. Adams, 459 Mass. 361, 394 (2011), quoting from Dalessio v. Dalessio, 409 Mass. 821, 828 (1991). Here, the source of the property assignment (the options given for efforts attributable to the marital partnership) is distinct from the source of the alimony obligation (the options given for postmarital efforts). It was thus within the judge's discretion to consider this latter category of options as a source of income in the alimony calculation. See Adams, 459 Mass. at 394 (affirming decision to assign present value of husband's partnership interest to marital estate, and to then include expected future incentive compensation in determining child support obligation); Champion, 54 Mass. App. Ct. at 221-222 (affirming decision treating husband's business as marital asset, and then including expected future stream of business income in determining husband's alimony and child support obligations).

The husband also contends that the judge's decision violates the Alimony Reform Act, which provides that "[w]hen issuing an order for alimony, the court shall exclude from its income calculation . . . capital gains income and dividend and interest income which derive from assets equitably divided

between the parties under [G. L. c. 208, §] 34." G. L. c. 208, § 53(c)(1), inserted by St. 2011, c. 124, § 3. This argument fails because the contested shares are not "assets equitably divided between the parties" for the reasons stated above. Furthermore, any money realized from the shares would not be "capital gains income" or "dividend and interest income." Rather, as the husband represented to the judge, the money would "almost entirely come through as W-2 income." See Wooters, 74 Mass. App. Ct. at 843 ("[I]ncome realized from the exercise of stock options . . . is commonly defined as part of one's compensation package, and it is listed on W-2 forms and is taxable along with the other income"). Accord Hoegen v. Hoegen, 89 Mass. App. Ct. 6, 9-10 (2016). We therefore agree with the judge's conclusion that "there is nothing in the Alimony Reform Act that prevents the Court from [including] Husband's unvested shares not previously divided in[] the definition of his income."

2. Date of valuation. The second disputed issue concerns the appropriate date for valuing the unvested stock options under the time rule. The later the date, the greater the numerator in the formula and, in turn, the number of shares available for equitable division. See Baccanti, 434 Mass. at 801. The expert applied the time rule using three different dates: December 31, 2013; March 31, 2014; and June 30, 2014.

After hearing arguments, but no testimony per the parties' stipulation, the judge ruled that the options should be valued and divided as of June 30, 2014, i.e., the date closest to when the original divorce judgment entered and the hearing on the contested issues occurred. The judge found the June 30 valuation date appropriate because both parties had been "diligent" and had not "intentionally prolonged the litigation."

The husband now argues that the judge abused his discretion by not selecting the valuation date of December 31, 2013, which is the date closest to when the parties separated in April of 2012. The sole reason he gives is that the judge did not make factual findings under G. L. c. 208, § 34, regarding the wife's "contribution to the maintenance of the unvested options" after the parties' separation.[9] But even putting aside the fact that contribution was "a discretionary, not a mandatory, factor" for the judge to consider, Baccanti, 434 Mass. at 792, citing G. L. c. 208, § 34, the husband can hardly fault the judge for not making findings when the parties, by stipulation, did not present any testimony or other evidence that would have enabled

---

[9] General Laws c. 208, § 34, as appearing in St. 1977, c. 467, provides, in pertinent part:

"The court may . . . consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates and the contribution of each of the parties as a homemaker to the family unit."

him to do so.  In any event, contrary to the husband's suggestion, the judge was not limited to considering "which party made the greater financial contribution to the acquisition of the assets."  deCastro v. deCastro, 415 Mass. 787, 794 (1993).  "The marriage-as-partnership concept, embodied in G. L. c. 208, § 34, recognizes that one party often concentrates on the financial side of the family while the other concentrates on homemaking and child care."  Ibid.  In this case the wife continued to contribute to the marriage after the parties separated, as it is undisputed that she remained the primary caretaker of their younger son while he finished high school. The husband has pointed to nothing in the record to support his claim that the judge abused his discretion in this respect.

Supplemental judgment of<br>divorce nisi affirmed.