NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1226

KAMBIZ NEGAHBAN

vs.

SEYEDEHSHABNAM NEGAHBAN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff (husband) appeals from a judgment of divorce nisi entered following a trial in the Probate and Family Court. The husband asserts the judge erred in the division of the marital estate because he engaged in inequitable "double dipping," erred in the valuation of the husband's ophthalmology practice, and abused his discretion with respect to so much of the judgment as relates to a second mortgage on the marital home.  We affirm.

1.  Property division.  "If a judge has made findings consistent with his obligations under G. L. c. 208, § 34 . . . , indicating that he has fairly considered all factors relevant under § 34 and has not considered any irrelevant matter, his

determinations as to . . . property division may not be reversed unless 'plainly wrong and excessive.' . . . The judge's reasons for his conclusions, however, must be apparent in his findings and rulings." Redding v. Redding, 398 Mass. 102, 107-108 (1986).

"Under G. L. c. 208, § 34, judges possess broad discretion to divide marital property equitably." Dalessio v. Dalessio, 409 Mass. 821, 830 (1991). "[T]he purpose of § 34 is to 'empower the courts to deal broadly with property and its equitable division incident to a divorce proceeding'" (alteration omitted). Lauricella v. Lauricella, 409 Mass. 211, 213-214 (1991), quoting Davidson v. Davidson, 19 Mass. App. Ct. 364, 371 (1985). "No specific formula need be followed to fashion an equitable judgment [under § 34]" (citation omitted). Dalessio, supra.

a. "Double dipping." "Commentators use the phrase 'double dipping' to describe the seeming injustice that occurs when property is awarded to one spouse in an equitable distribution of marital assets and is then also considered as a source of income for purposes of imposing support obligations." Champion v. Champion, 54 Mass. App. Ct. 215, 219 (2002). "Double dipping" is not prohibited as a matter of law; "[r]ather, . . . the judge must look to the equities of the situation to make her determination." Croak v. Bergeron, 67 Mass. App. Ct. 750, 759

(2006). "[W]hile Massachusetts has looked with disfavor at so-called 'double dipping,' . . . what constitutes 'double dipping' is not easily defined, and whether it is improper in a particular case must be carefully assessed" (quotation omitted). Wasson v. Wasson, 81 Mass. App. Ct. 574, 579 (2012), quoting Adams v. Adams, 459 Mass. 361, 394 (2011). Courts will not conclude there is "double dipping" "where it is possible to 'identify separate portions of a given asset of a divorcing spouse as the separate bases of the property assignment and any alimony or support obligations.'" Adlakha v. Adlakha, 65 Mass. App. Ct. 860, 865 (2006), quoting Dalessio, 409 Mass. at 828.

The husband maintains that it was inequitable "double dipping" to award him his ophthalmology practice (practice) and also consider it as a source of income for support purposes. We disagree. The judge valued the practice using the capitalization of earnings method and deducted a reasonable salary expense for the husband.[1] Thus, the judge properly "distinguish[ed] the income of the business from the reasonable salary of the owner-operator, which was deducted as an expense from the business income." Adlakha, 65 Mass. App. Ct. at 865 (no "double dipping" where valuation of spouse's business included deduction for reasonable salary expense of owner-

_____

[1] To the extent the husband argues that the deduction should have been higher, we discern no clear error.

3

operator spouse).  Even if we were to conclude that the judge engaged in "double dipping," it was not inequitable because it would be to the detriment of the husband, who was the higher earner.  See, e.g., Champion, 54 Mass. App. Ct. at 222.

b.  Valuation of the practice.  "Valuation of a business is a question of fact."  Bernier v. Bernier, 449 Mass. 774, 785 (2007).  "Thus, the standard is whether the judge's findings were clearly erroneous."  Id.  "When the opinions of valuation experts differ, a judge may 'accept one reasonable opinion and reject the other.'"  Id., quoting Fechtor v. Fechtor, 26 Mass. App. Ct. 859, 863 (1989).  Alternatively, the judge can "reject expert opinion altogether and arrive at a valuation on other evidence."  Fechtor, supra.

The husband maintains that the judge's valuation of the practice was erroneous because the judge failed to provide the value of the husband's normalized 2020 salary and did not articulate the capitalization rate used in his calculations.  We are not persuaded.  The judge concluded that the husband's 2020 salary "should not be adjusted" because that year's decreased salary "was reflective of a decrease in the amount that he was working that year" because of the COVID-19 pandemic.  The evidence supports this conclusion.

We are similarly unpersuaded by the assertion that the judge had to recite the capitalization rate.  The judge reasoned

4

that the wife's valuation expert "reduced his capitalization rate by 2.6% to account for sustainable growth," but that the practice's "earnings do not historically reflect that rate of growth." Accordingly, and favorably to the husband's interests, the judge declined to adopt the expert's proposed valuation of $1,158,970, which the expert reached by using a capitalization rate of 15.91%. The judge instead found a valuation of $996,175. This valuation and the supporting rationale fell within the judge's discretion and are not clearly erroneous.

2. Second mortgage. Finally, the husband asserts that the judge abused his discretion by discrediting the promissory note underlying the second mortgage and ordering the husband to take steps to remove the second mortgage. We discern no error.

After hearing testimony from the husband and wife, and reviewing the promissory note and supporting evidence, the judge determined that the promissory note was "not credible," so the second mortgage was "not a legitimate encumbrance on . . . the marital home." This finding was adequately supported by the evidence. As the judge reasoned, the promissory note was "not notarized, and neither Husband's mother nor his sister testified to corroborate the details of execution." The judge found that the wife testified credibly that the husband did not raise financial concerns about buying the marital home and that, while she knew some of the funds originated in Iran, the wife was not

5

aware that the husband's mother was involved, or that there was a promissory note, until discovery in the divorce case. Further, the judge noted that the "promissory note was not recorded as a second mortgage on the Marital Home until September 20, 2019, nearly a decade after the promissory note was allegedly executed and on the eve of divorce." The judge acted well within his discretion in rejecting the legitimacy of the promissory note. See B.B.V. v. B.S.V., 68 Mass. App. Ct. 12, 18-19 (2006).

The judge ordered that, "[t]o the extent necessary for sale, Husband shall take steps to release the second mortgage from the Marital Home prior to sale, pursuant to the terms of the Judgment of Divorce." Contrary to the husband's assertion, this order is directed to the husband, not a third party. The language in the judgment for divorce is no more helpful to the husband's argument: "Within seven (7) days of the date of this Judgment, Husband shall initiate the process required to remove the illegitimate second mortgage from the Marital Home so that

it can be placed on the market for sale."  Here, again, the
judge directs only the husband to act.[2]  There was no error.[3]

Judgment affirmed.

By the Court (Blake, C.J.,
  Henry & Hershfang, JJ.[4])

Clerk

Entered:  December 1, 2025.

---

[2] After the entry of the judgment for divorce, the wife
filed a complaint for contempt alleging the husband had not
complied with the order to remove the second mortgage and sell
the marital home.  The appeal from the resulting contempt
judgment remains pending before a different panel of this court,
no. 25-P-1118, and we express no opinion on the merits of that
case.

[3] The wife's request for appellate attorney's fees is
denied.

[4] The panelists are listed in order of seniority.