A. Wayne Sampson *vs.* Elaine M. Sampson.

No. 03-P-57.

Worcester. May 10, 2004. - October 29, 2004.

Present: Lenk, Kafker, & Green, JJ.

*Divorce and Separation,* Alimony, Division of property.

This court vacated the award of alimony in a divorce action, where the judge's
    financial disposition left the wife presently in economically straitened
    circumstances while the husband was virtually guaranteed continued enjoy-
    ment of the secure, comfortable marital lifestyle [368-371]; moreover, this
    court remanded for reconsideration the judge's division of the parties'
    property, because of a highly disproportional and apparently inequitable
    split in the marriage's only significant liquid assets arising out of an asym-
    metric application of buyout requirements that could have been avoided by
    the adoption of the preferred approach to the assignment of pension benefits
    [371-373], and because the judge's findings and conclusions failed to
    demonstrate that he had considered whether "double dipping" had oc-
    curred in connection with the valuation of the wife's business and whether
    his orders were consistent with the principles enunciated in *Dalessio* v.
    *Dalessio,* 409 Mass. 821, 827-828 (1991), and *Champion* v. *Champion,* 54
    Mass. App. Ct. 215, 220-222 (2002) [373-378].
In a divorce action, the record supported the judge's finding that money
    transferred from the parties to the wife's brother was intended as a loan for
    which the parties expected repayment. [378-379]

COMPLAINT for divorce filed in the Worcester Division of the
Probate and Family Court Department on April 10, 2001.

The case was heard by *Joseph L. Hart,* J., and a motion to
alter or amend the judgment was considered by him.

*Wendy H. Sibbison* for Elaine M. Sampson.

*George P. Lordan, Jr. (Dennis P. Derrick* with him) for
A. Wayne Sampson.

KAFKER, J. Elaine M. Sampson (wife), the former wife of
A. Wayne Sampson (husband), appeals from a judgment of the
Probate Court which divides the parties' property and orders the
husband to pay to her $200 a week as alimony for no longer

than three years. She contends that the amount of weekly alimony fails to consider her needs, the three-year durational limit was improper, and the division of assets was flawed by the asymmetrical treatment and double counting of assets. As we conclude that the provisions for alimony and property division must be set aside, we remand the matter to the Probate Court for the framing of a more suitable award.

1. *The facts.* The parties were married in October, 1977, and separated in August, 2001. No children were born of the union. The husband, a police chief, holds a juris doctor degree, and earns $1,932.68 a week.[1] The wife holds several insurance licences and owns her own insurance agency and, although she "does not consistently work full time," earns $806 a week. At the time of trial, the parties were each fifty years of age and in good health. The judge characterized their station as "middle income."

During the marriage the parties owned and lived in a home located at 48 Old Mill Road in Shrewsbury. In June, 2000, they agreed to demolish that home and construct a new home on the same site. At the time of trial, the wife lived in the (almost completed) new home, which had an appraised value of $700,000 and equity (after the payment of construction and other loans) of $417,200. The marital estate also included the husband's interest in property located at 100 Old Mill Road (valued at approximately $30,000),[2] the husband's State pension (present value $762,425),[3] the husband's deferred compensation account ($31,032.64), the husband's individual retirement accounts ($23,404.81), the wife's insurance agency (fair market

---

[1]The husband's weekly income is comprised of his salary ($1,543.75) and so-called "Quinn Bill" compensation ($388.93) which is paid to police officers as an incentive to further their educations. Although the Quinn Bill requires annual funding from the Legislature, the husband testified that he has always received the compensation.

[2]This property was part of the husband's mother's estate and was held in trust by the husband and his six siblings. At the time of trial, the husband resided at the property and testified that he had agreed to purchase the property (which had a value of $217,500) from his siblings for $175,000 upon completion of the divorce action. The $30,000 value reflected his one-seventh interest in the property.

[3]The present value of the pension, as found by the judge, assumes that the husband will retire at the age of fifty-five.

value, based on a capitalized income method, of $175,000 — an amount, as we shall discuss, that is challenged by the wife), the wife's individual retirement account ($7,134.54), and certain other personal and intangible property in the parties' individual names including automobiles, jewelry, and bank accounts.

The judge concluded that although the husband was the primary wage earner in this long-term marriage, the marriage was a partnership in which both parties contributed equally, entitling them to an "approximately equal division of the marital assets." To effectuate his intended division, the judge assigned to the wife her business, $121,100 from the proceeds from the sale of the marital home,[4] and other assets worth $62,000.[5] The judge also ordered the husband to transfer to the wife by domestic relations order an amount equal to 46.5 percent of his State pension benefits accrued as of the date of the judgment. The judge assigned to the husband $296,100 from the proceeds of the sale of the marital home ($175,000 to offset the value of the wife's business plus one-half of the equity then remaining in the house [i.e., $121,100]), his interest in the property located at 100 Old Mill Road, and other assets totaling $50,150 in value. The husband was also assigned his remaining interest in his State pension plan. In addition, the husband was granted the right (discussed more fully, *infra*) to pursue any claim the parties might have against the wife's brother for certain monies the parties lent him during the marriage. Finally, the judge awarded the wife alimony in the amount of $200 a week to be paid until the death of either party, the remarriage of the wife, or for a period of three years, "whichever is sooner."

After the wife's motion to alter or amend the judgment was denied, she filed a notice of appeal from the judgment of divorce and from the order denying her motion to alter or amend, challenging the alimony and property division award.

2. *Alimony.* The wife argues that the alimony award must be

---

[4]Noting that the wife would not be able to "afford" the new home, the judge ordered that it be sold. As we have indicated, the judge found that the parties' equity in the home was $417,200. From this amount he subtracted $175,000 to "offset the value of the wife's business," and divided equally the remaining amount.

[5]The "other assets" consisted of jewelry, clothing, and automobiles worth $31,400 and individual retirement accounts worth $30,600.

vacated as it fails properly to consider her need as measured by the parties' marital standard of living.

The principles governing awards of alimony are well established. "The focus of any financial award must include 'the crucial issue in an alimony dispute, namely, the [spouse's] need for support and maintenance in relationship to the respective financial circumstances of the parties.' " *Grubert* v. *Grubert*, 20 Mass. App. Ct. 811, 819 (1985), quoting from *Partridge* v. *Partridge*, 14 Mass. App. Ct. 918, 919 (1982). See *Rosenberg* v. *Rosenberg*, 33 Mass. App. Ct. 903, 904 (1992); *D.L.* v. *G.L.*, 61 Mass. App. Ct. 488, 507 (2004). "The standard of need is measured by the 'station' of the parties — by what is required to maintain a standard of living comparable to the one enjoyed during the marriage." *Grubert* v. *Grubert*, 20 Mass. App. Ct. at 819. See *Kehoe* v. *Kehoe*, 31 Mass. App. Ct. 958, 959 (1992). "Although alimony and property division serve different purposes, they are interrelated remedies that cannot be viewed apart" (citations omitted). *D.L.* v. *G.L.*, 61 Mass. App. Ct. at 508. "Upon consideration of the factors specified in G. L. c. 208, § 34, a judge has considerable discretion in fashioning an alimony award." *Ibid.*

In awarding the wife up to three years of alimony in the amount of $200 per week, in addition to her present weekly pretax income of $806, the judge concluded that the wife would be able to meet her expenses now, while working towards self-sufficiency in three years. After the payment of State and Federal income taxes, the wife represents that she will have approximately $675 a week to live on.[6]

The judge's own findings cast doubt on the wife's present

---

[6]The wife represented on her financial statement and testified at trial that her gross weekly pay was $806 and her adjusted net weekly income, before alimony, was $478. In her brief, the wife computes her after tax weekly income, including alimony, at $675.23. The husband does not challenge per se the wife's tax computations but argues that in view of the judge's findings that the wife has the ability to increase her income, the wife's "dire calculations based upon this clearly erroneous and obsolete income figure are . . . unsupported by the evidence." The husband's position overlooks the judge's findings that the wife has the ability to earn additional income "in the future" and "in the coming years" and that she will require time to "position herself, financially," and improperly assumes that the wife has an *immediate* ability to increase substantially her income.

ability to meet her ordinary needs. While the judge's finding that the wife's stated weekly expenses of $816 was "somewhat inflated" is not clearly erroneous,[7] the judge recognized that the wife's financial statement did *not* reflect any rent or housing expenses. Furthermore, neither the judgment nor the findings explain how the wife, on net yearly income of $35,100, presently can achieve (or approximate) the comfortable middle income standard of living the parties enjoyed during the marriage.[8] Clearly, the marital assets assigned to the wife will not allow her to make up the difference. As the wife correctly states, the sole practical value of her business is as a source of income.[9] Should she sell her business, she would lose her job and her income. Similarly, the wife cannot derive meaningful income from the liquid capital of $121,100.

In stark contrast, the husband's postdivorce, gross annual income will exceed $90,000 after the payment of alimony. The judgment also awards him almost $300,000 in cash in addition to his interest in the property located at 100 Old Mill Road.

Where, as here, the judge's financial disposition leaves one party (the wife) presently in economically straitened circumstances while the other party (the husband) is virtually guaranteed continued enjoyment of the secure, comfortable marital lifestyle, the order for alimony cannot stand. See *Goldman* v. *Goldman*, 28 Mass. App. Ct. 603, 611 (1990) ("Absent good reason, in a long term marriage, there is no justification for the life-style of one spouse to go down while the other

[7] For example, the wife admitted at trial that she had not been paying a claimed weekly expense of $153 for real estate taxes, and the judge called into question the wife's claimed expense of $76 a week related to her continued care of two large Bouvier des Flandres dogs owned by the parties during the marriage.

[8] Although the judge characterized the parties' station as "middle income," it was certainly an upscale middle income lifestyle. As we have indicated, the parties were completing construction of a $700,000 home. There was also evidence that the parties did not deny themselves material possessions, including jewelry and furs for the wife and a late model automobile and Harley Davidson motorcycle for the husband. In addition, there was evidence that when the husband graduated from law school the wife threw a party for him that cost in excess of $7,000.

[9] The judge made no specific findings regarding the wife's earning capacity outside of the business.

remains high"). Cf. *Kehoe* v. *Kehoe*, 31 Mass. App. Ct. at 959-960.

The wife also argues that the judge erred in placing a three year limit on the alimony award. We agree. We have admonished that "an arbitrary limitation on the duration of an alimony obligation to a spouse whose needs are current and predictable is unwarranted when based on an assumption of future events, the occurrence of which is uncertain or unpredictable." *Katz* v. *Katz*, 55 Mass. App. Ct. 472, 482-483 (2002). See *Goldman* v. *Goldman*, 28 Mass. App. Ct. at 613 ("Where future events cannot be predicted with any measure of certainty, an alimony award should be based on present conditions"); *Martin* v. *Martin*, 29 Mass. App. Ct. 921, 921-922 (1990); *D.L.* v. *G.L.*, 61 Mass. App. Ct. at 510. It is simply uncertain at this juncture whether the wife, a sole proprietor of a small business, will be able to earn sufficient additional income so as to render alimony unnecessary. In the circumstances, the durational limit on the alimony award must be set aside. "Needless to say, should their circumstances change in the future, the parties are free to return to court for an appropriate modification order." *D.L.* v. *G.L.*, 61 Mass. App. Ct. at 510.

Accordingly, the alimony award must be vacated and the matter remanded to the Probate Court for further proceedings. As alimony and equitable division, as we have stated, may be interrelated remedies, and as there are additional reasons (discussed *infra*) why the property division cannot stand, we vacate also those provisions of the judgment providing for the equitable division of the parties' property.

3. *The property division.* "[A]n equitable . . . division of property is the ultimate goal of G. L. c. 208, § 34." *Williams* v. *Massa*, 431 Mass. 619, 626 (2000). Here, although the judge was apparently of the opinion that an equal division of the marital assets would be an equitable division, a close examination of his findings and judgment reveals that the purported "evenhanded treatment was illusory." *Grubert* v. *Grubert*, 20 Mass. App. Ct. at 817. Indeed, the property division fails to consider sufficiently the consequences of the asymmetric treatment and apparent double counting of assets, all to the benefit of the husband and to the detriment of the wife.

a. *The "asymmetric buy-out requirements."* Of the major assets owned by the parties at the time of the divorce (i.e., the wife's business, the husband's pension rights, and the 48 Old Mill Road property) only the 48 Old Mill Road property had significant, readily accessible cash value. The judge awarded the husband $296,100 from the proceeds of the sale of the house while the wife received only $121,000. This seventy-one percent to twenty-nine percent split of the usable capital produced by the marriage was caused by the order that the husband receive cash to offset the present value of the wife's business,[10] with no comparable order that the wife receive cash to offset the present value of his pension rights. More specifically, as the wife demonstrated, although the judge appeared to divide in the chart accompanying his findings[11] the present value of the husband's pension (thus leaving the impression that the wife presently has access to additional liquid assets), he in fact employed the alternative method for dividing pension rights by way of domestic relations order, on an "if and when received" basis.[12] See *Early* v. *State Bd. of Retirement*, 420 Mass. 836, 841-842 (1995).

As the court has previously stated, where there are "sufficient assets available," the "present assignment of a percentage of the present value of the future pension benefits is the preferable approach." *Dewan* v. *Dewan*, 399 Mass. 754, 757 (1987). While we recognize that the parties' assets are insufficient to distribute to the wife her full share of the husband's pension, "an assignment of a percentage of the present value of the future pension benefits could be made to the extent that a hardship does not result for the employee spouse, while the nonemployee spouse's remaining interest could be realized if and when the pension benefits are actually received." *Id.* at 760 n.5. See *Dewan* v. *Dewan*, 30 Mass. App. Ct. 133, 134 (1991).

---

[10] As explained below, the wife's business also appears to have been overvalued.

[11] In the chart, the judge totaled the value of the property assigned to each party and computed the percentage allocation of the parties' assets.

[12] "A judge may assign pension benefits 'either as a present assignment of a percentage of the present value of the future pension benefits or as a percentage of the pension benefits attributable to the marriage if and when the benefits are actually received.' " *Early* v. *Early*, 413 Mass. 720, 725-726 (1992), quoting from *Dewan* v. *Dewan*, 399 Mass. 754, 755 (1987).

We conclude that a highly disproportional and apparently inequitable split in the marriage's only significant liquid assets has occurred. It has also arisen out of an asymmetric application of buyout requirements that could have been avoided by the adoption of the preferred approach to the assignment of pension benefits. *Dewan* v. *Dewan*, 399 Mass. at 760. This requires reconsideration on remand; the judge should consider and explore these matters, together with other interrelated issues discussed in this opinion, in fashioning a new financial award for the parties and should enter appropriate findings thereon.

b. *Double counting*. The judge accepted the husband's expert's $175,000 valuation of the wife's insurance agency. That valuation was based on the "capitalization of earnings" method. The husband's expert estimated the wife's annual "total weighted average projected earnings" at $41,728, which he then divided by a 19.1 percent capitalization rate. He then discounted the resulting value of the business ($219,505) by twenty percent for lack of marketability, yielding a present fair market value of the business of $175,000.

The wife argues that because the judge converted her anticipated future income into property (and assigned the husband $175,000 to offset the wife's retention of this property), and then gave the husband the full benefit of the same future income to offset his alimony obligation, "the husband receive[d] a double credit, and the wife a double debit, for the same source: her future income." The wife asserts that once a judge converts a specific stream of income into an asset, that income may no longer be calculated into the support formula (apparently, in the wife's view, as matter of law). See *Grunfeld* v. *Grunfeld*, 94 N.Y.2d 696, 705 (2000).[13]

"Commentators use the phrase 'double dipping' to describe

---

[13]The wife also appears to suggest that the judge should not have accepted a value for her business based upon the "capitalization of earnings" method as such a method incorporates her future earning capacity and goodwill which, the wife states, are not divisible marital assets. At trial, not only did the husband's expert calculate the value of the wife's business based on the capitalization of earnings method, the wife's expert did so as well. (Both experts used an alternative, admittedly less accurate, reasonableness test as a check on their primary method of valuation.) The experts did not provide the judge with any other methodology for valuing the business. In her financial statement, which was an exhibit at trial, the wife listed her insurance business

the seeming injustice that occurs when property is awarded to one spouse in an equitable distribution of marital assets and is then also considered as a source of income for purposes of imposing support obligations." *Champion* v. *Champion*, 54 Mass. App. Ct. 215, 219 (2002). Courts and commentators have often disagreed, however, as to what constitutes double-dipping, whether double-dipping ought to be prohibited as a matter of law, and if not so prohibited, whether it is inequitable in the circumstances of the particular divorce settlement. See, e.g., *id.* at 219-220 & n.8. See also 2 Valuation & Distribution of Marital Property § 41.07[3], at 41-65 (2004) ("A frequently litigated issue, on which there is a sharp split of authority, is the so-called 'double counting' or 'double dipping' issue"). Where, as here, the asset in question is an owner-operated business that is being valued but not being sold, and therefore will be the source of ongoing support for one spouse or both, the analysis is even more complicated.[14]

In *Dalessio* v. *Dalessio*, 409 Mass. 821, 828 (1991), the court, commenting on the husband's argument that the wife, in the circumstances there presented,[15] would receive the benefit of a double recovery from a single resource, stated, "So long as it is

---

as an asset and referred to its "valuation dated February 13, 2002 [the date of her expert's report]." In the circumstances presented here, the wife is not in a position to claim now that the judge should not have accepted a valuation based on the capitalization of earnings method. Compare and contrast *Turners Falls Ltd. Partnership* v. *Board of Assessors of Montague*, 54 Mass. App. Ct. 732, 736-738 (2002).

[14]The difficulties, in the divorce context, of valuing closely held businesses are the subject of much discussion. See, e.g., Kindregan & Inker, Family Law and Practice § 45.8, at 332 (3d ed. 2002) (valuations of closely held businesses are "not an exact science . . . especially one dealing in services and largely dependent on the personalities and abilities of its principals"); 2 Massachusetts Divorce Law Practice Manual § 14.4.5 (Mass. Continuing Legal Educ. 2000); Zipp, Divorce Valuation of Business Interests: A Capitalization of Earnings Approach, XXIII Fam. L. Q. 89, 90 (1989). See also *Righter* v. *United States*, 439 F.2d 1204 (Ct. Cl. 1971); *Neuman* v. *Neuman*, 842 P.2d 575, 581 (Wyo. 1992) ("valuation of a closely-held business is among the more difficult problems in divorce cases").

[15]In *Dalessio* v. *Dalessio*, 409 Mass. at 823-825, the assets being divided were the proceeds from a large tort settlement arising out of the husband's industrial accident. From the accident, the husband received an annuity of $6,000 per month for life and a cash lump sum of $514,529. *Id.* at 823. The wife received an annuity of $2,000 per month and a cash lump sum of $200,000. *Ibid.* Prior to the divorce, they had combined their lump sums into

possible . . . to identify separate portions of a given asset of a divorcing spouse as the separate bases of the property assignment and any alimony or support obligations (thus avoiding redistribution by an alimony or support order of specific assets that already have been equitably assigned), there is nothing improper about including a particular asset within a spouse's assignable estate, assigning part of it, and then counting its remainder for alimony and child support purposes."

In *Champion* v. *Champion*, 54 Mass. App. Ct. at 220-222, this court applied these principles in the context of a divorce involving the husband's sole proprietorship, which sold and installed new and used telecommunications equipment. We determined that there was no inequitable double counting, where in the division of marital assets the husband was credited with the value of the business,[16] and for the purposes of determining his alimony and child support obligation, the court used his annual income from the business. We also went on to state that even if there were some double counting present, all the equities in the divorce settlement needed to be considered, as "[t]here is nothing in *Dalessio, supra,* or G. L. c. 208, § 34, that prohibits 'double-dipping' as matter of law." *Id.* at 222.[17] See *Cook* v. *Cook*, 208 Wis. 2d. 166, 180 (1997).

In the instant case, unlike *Champion* v. *Champion, supra,* a capitalized income method was utilized by both parties' experts in valuing the wife's business.[18] Such a method requires subtraction from business income of a reasonable salary expense for the operator of the business. See 2 Valuation & Distribution

---

one joint investment account. *Ibid.* The Probate Court judge ordered that the wife retain her annuity and receive forty percent of the joint investment account plus forty percent of two-thirds of the present value of the husband's annuity, the sum of which was to come from the joint investment account. The judge also "ordered the husband to pay child support in an amount that represents only a small fraction of the husband's remaining assets" in the annuity and the joint investment account. *Id.* at 827-828.

[16]The business was valued at $54,000 by subtracting the business's liabilities from its inventory and receivables, and no good will was found or valued by the expert apart from personal good will of the owner. The owner's income was found to be $102,000 a year.

[17]Among the equities to be considered in *Champion* was the wife's unemployment and health problems.

[18]See note 13, *supra.*

of Marital Property § 22.08[3][a], at 22-93. See also *In re Marriage of Cookson & Cookson*, 134 Or. App. 357, 362 (1995); *Rattee* v. *Rattee*, 146 N.H. 44, 48 (2001); Zipp, Divorce Valuation of Business Interests: A Capitalization of Earnings Approach, XXIII Fam. L. Q. 84, 94 (1984). Without subtraction of a sum representing a reasonable salary, there is significant concern that the business may be overvalued. Moreover, where such a salary is subtracted, it facilitates the identification of those portions of a given asset providing separate bases of property assignment and alimony as articulated by *Dalessio* v. *Dalessio, supra.*

Here, however, the expert whose testimony was credited by the judge did not adjust directly for the owner-operator's salary. Rather, while recognizing that an owner-operator's salary should be subtracted, the expert did not do so. Instead, the expert deducted the salary of the business's sole employee other than the wife, a customer services representative whose much lower annual salary had ranged from $17,532 to $23,264 over a five year period. Without explanation in his report, the expert concluded that the customer services representative's salary was an appropriate salary for a "part-time owner." The expert also summarily concluded that the part-time owner could do the work of the customer services representative as well as her own.

Read closely, other parts of the report raise significant questions about the appropriateness of the smaller salary deduction. For example, the expert recognizes only that it "may be possible" to replace the owner, but not with someone with the owner's familiarity with the agency's operations. The expert's report is also inconsistent. On the one hand, it emphasizes the value of the two-person operation, particularly in terms of its ability simultaneously to maintain its high quality service, market to new customers, and position the agency for future growth; on the other hand, it finds that one part-time owner can perform all these functions for the small salary of the current customer services representative. The judge does not address these critical and questionable aspects of the expert's valuation. See *Redding* v. *Redding*, 398 Mass. 102, 108 (1986) ("Any failure in the decision-making process to consider and explain

the effect of an important fact may require reversal of the judgment in order to permit consideration and explanation of the omitted subject"). The judge simply accepted the $175,000 valuation and assigned the husband $175,000 from the proceeds of the house to offset the value of the wife's business.

Furthermore, when considering the wife's income for the purposes of determining her need for support, the judge made no adjustments, concluding that she would earn $41,912 a year. The $41,912 was based on what she was earning from the business without recognizing that some of that income had been attributed to the value of the business itself. For that additional income, the husband had already been compensated by providing him with an otherwise disproportionate share of the proceeds from the sale of the house. See *Murphy* v. *Murphy*, 6 A.D.3d 678 (N.Y. 2004). Cf. *Rattee* v. *Rattee*, 146 N.H. at 47-48. Concerns are thereby raised that either the value of the business was inflated by artificially deflating the salary of the owner-operator or, conversely, that the wife's income was inflated when determining her need for support. 2 Valuation & Distribution of Marital Property § 22.04[5][d], at 22-46. Zipp, Divorce Valuation of Business Interests: A Capitalization of Earnings Approach, *supra* at 94.

In sum, there appear to be some "double counting" and other inequities present, all to the benefit of the husband, who was the higher earner.[19] Nevertheless, the judge's findings and conclusions fail to demonstrate that he considered whether double dipping had occurred, and whether his orders were consistent with the principles enunciated in *Dalessio* v. *Dalessio*, 409 Mass. at 827-828, and *Champion* v. *Champion*, 54 Mass. App. Ct. at 220-222. As with the issue of the asymmetrical buy-out provision, the judge should consider these issues on remand. To resolve this issue, further fact finding, including the taking of additional evidence, may also be required

[19]Usually the double dipping, if it exists, occurs to the disadvantage of "the economically superior spouse" not the economically inferior spouse as was the case here, 2 Valuation & Distribution of Marital Property § 41-07[3], 41-65. See, e.g., *Champion* v. *Champion*, 54 Mass. App. Ct. at 219-221; *Rattee* v. *Rattee*, 146 N.H. at 48-49; *Cook* v. *Cook*, 208 Wis. 2d at 180.

on the question of the reasonableness of the owner-operator's salary, which was not specifically addressed by the judge.[20,21]

4. *The "loan" to wife's brother.* The judge found that during the marriage the parties transferred to the wife's brother approximately $130,000-$135,000, which the brother used as a down payment on property and for a business investment. The judge did not credit the wife's testimony that this sizable amount of money was a gift but found that it was intended as a loan for which the parties expected repayment. The judge ordered that the husband had the right to pursue any claim against the wife's brother for the above sum and that any net proceeds realized were to be divided fifty-five percent to the husband and forty-five percent to the wife.[22]

The wife argues that there is no support for the ruling that the parties had any legally cognizable claim against her brother and, in fact, the husband testified that he had never asked the

---

[20]The wife also argues that the husband's expert used an inflated capitalization rate (19.01 percent as opposed to her expert's use of a thirty-one percent rate) and neglected to factor into the rate such factors as the agency's low profitability, high loss ratio, actual loss of two major customers, and the likely loss of one of her principal insurance carriers. "Faced with a battle of experts, the fact finder may accept one reasonable opinion and reject the other." *Fechtor* v. *Fechtor*, 26 Mass. App. Ct. 859, 863 (1989). It is enough to say that the husband's expert considered the wife's agency's loss of the two customers (noting that the loss would not affect the "bottom line" valuation of the agency), the possible loss of an insurance carrier (noting that such a loss would precipitate a transfer of business to one of the agency's other insurance carriers) and the loss ratio of the agency. Confronted with a difference of opinion as to the proper capitalization rate, "the judge was entitled to make a reasoned choice." *Id.* at 865. His decision to adopt the husband's expert's figure cannot by itself be said to constitute error.

[21]There is an additional point related to the property division that the judge should consider on remand. Although the judge included within the marital estate the husband's interest in the property located at 100 Old Mill Road, and assigned that interest to the husband, the judge did not include the property in the asset chart attached to the findings. It is not clear why the judge omitted this asset from the chart, or whether, if the asset had been included, it would have altered in any respect the property assignment. We also note that although the judge included in the chart a value for the wife's Social Security benefits, he properly indicated that he was not including those benefits within the marital estate but was merely considering them in making an equitable division of the husband's pension. See *Mahoney* v. *Mahoney*, 425 Mass. 441, 446 (1997).

[22]The judge awarded the husband a larger share of the potential proceeds "because he is charged with pursuing the claim."

wife's brother for the money back and admitted that there were no documents to evidence the fact that there was to be a repayment of the monies. While the evidence supporting the judge's finding of a loan is not overwhelming, the husband testified that he was in agreement with the wife that they would "lend" the wife's brother the money. In the circumstances, we cannot say that the judge's finding is unsupported.[23]

5. *Summary.* So much of the judgment of divorce nisi as pertains to alimony and property division is vacated and the matter is remanded to the Probate Court for action consistent with this opinion. Although we vacate the order for support, the present terms of that order are to remain in effect temporarily pending new orders by the probate judge. The judge shall take such additional evidence as he deems necessary and appropriate. The new orders shall be supported by findings of fact and conclusions of law. In all other respects, the judgment is affirmed.[24]

*So ordered.*

---

[23]We do not intimate by our decision that the wife's brother is bound by the judge's findings that the payments to him in the approximate amount of $150,000 were a loan.

[24]The husband's request for attorney's fees in connection with this appeal are denied.