NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1102

SAM CHIU

vs.

LIANXIANG FU.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Sam Chiu (husband), the former spouse of Lianxiang Fu (wife), appeals from a judgment of divorce nisi (divorce judgment)[1] issued by a judge of the Probate and Family Court after a trial that concluded in January 2021. The husband challenges (1) rulings related to alleged assets of the wife;

---

[1] In his May 2022 notice of appeal, the defendant purports to appeal from an October 15, 2019 contempt judgment, among other things. However, there is nothing in the record showing that the husband filed a timely notice of appeal within thirty days of the entry of the October 2019 contempt judgment. See Mass. R. A. P. 4 (a) (1), as appearing in 481 Mass. 1606 (2019). The docket also contains an entry dated May 9, 2022, which states, in relevant part, "[a]ppeal references rulings made beyond the [thirty] day docket requirement. No motion to file late appeal filed." Accordingly, the husband's untimely appeal from the October 2019 contempt judgment is not properly before us.

(2) the division of the parties' assets pursuant to G. L. c. 208, § 34; and (3) the judge's decision not to award any general term alimony to the husband. We vacate the portions of the divorce judgment relating to property division and alimony, and remand the case for further proceedings consistent with this decision. The divorce judgment is affirmed in all other respects.

Background. We summarize the trial judge's relevant findings, supplementing them with undisputed facts in the record, and reserving other facts for later discussion. See Pierce v. Pierce, 455 Mass. 286, 288 (2009).

The parties were married in China in 1992. They have one child who was born in 1996.[2] While the parties lived together in China when they first got married, they lived apart from one another throughout the majority of their twenty-three year marriage. Between 2003 and 2006, the wife lived primarily in Zhuhai, China, while the husband lived 100 miles away in Shenzhen with their child. In 2009, the husband and the child moved to the United States, living first in Missouri, and later settling in Massachusetts. The wife moved to the United States in 2013, and lived with the husband and child in Massachusetts, during which time she slept on a mattress in the child's room.

---

[2] The parties' son was emancipated at the time that the divorce judgment issued.

In January 2016, the wife purchased a home in Lexington using funds from her brother (Lexington property).[3]  The parties and the child lived together in the Lexington property from approximately April 2016 to January 2017, during which time the parties slept in separate bedrooms.  The husband was abusive and controlling toward the wife throughout the marriage, and, in January 2017, the wife obtained a G. L. c. 209A abuse prevention order against him.

In April 2017, the husband filed a complaint for divorce in the Probate and Family Court.  In his complaint, he requested conveyance of the Lexington property.[4]  Pursuant to a May 2018 temporary order, the wife was ordered to pay the husband temporary alimony of $300 per week.  Subsequently, a discovery master was appointed in July 2018.  In a March 27, 2019 order,

---

[3] The wife asserted in her financial statements that although she is the titleholder of the Lexington property she purchased the property on behalf of her brother, who she claimed was the actual owner.  Concerning this arrangement, she represented that she and her brother have a written agreement, the details of which are outlined in the explanatory notes to her financial statement.  While the judge credited the wife's assertion that she purchased the home with funds from her brother, the judge did not make any finding that the wife purchased the Lexington property on behalf of her brother, or that the wife was the titleholder of the property in name only.

[4] The husband listed the Lexington property as his residence and the parties' residence in his complaint.  In her answer and counterclaim to the complaint, the wife likewise listed the Lexington property as her residence.

the discovery master denied the wife's objections to the husband's revised request for interrogatories and production of documents. The husband later filed a motion to compel the wife to produce the requested documents, which the discovery master allowed in October 2019.

Sometime in 2019, the husband traveled to China, entered an apartment that the wife claimed belonged to her brother, and obtained documents without permission. The husband asserted that the documents, which he stored in a laundry basket (laundry basket documents), contained evidence of the wife's alleged undisclosed assets in China. On August 29, 2019, after a hearing, the judge issued an order directing the husband to "produce [an] itemized list [and] copies of all items taken out of [the wife's] brother's home in China forthwith." On September 6, 2019, the wife filed a complaint for contempt alleging that the husband failed to comply with the August 29 order. Following a hearing on October 3, 2019, the judge found the husband in contempt and a contempt judgment entered on October 3, 2019.

The judge ordered that the laundry basket documents be provided to the discovery master to determine whether they should be allowed in evidence. On November 25, 2019, the discovery master issued an order denying the husband's request to place the laundry basket documents on the trial exhibit list

4

because:  (1) they were written in Chinese and were not accompanied by any English translations, which was prejudicial to the wife; and (2) the husband had failed to produce copies of these documents pursuant to the August 29 order.  The husband filed a motion contesting the discovery master's November 25 order, which the judge denied in December 2019.

In November 2020, after the trial had commenced, the husband sought to introduce documents, obtained and translated by his counsel in China,[5] that purported to show that the wife transferred various Chinese assets to her brother after the husband filed his complaint for divorce in 2017.  The husband also filed a motion for sanctions, alleging that the wife failed to comply with the discovery master's orders by not producing these documents.  The judge denied the motion for sanctions. The wife filed a motion in limine to preclude the husband from introducing documents obtained by the husband's counsel in China.  The judge allowed the wife's motion, noting the husband's failure to meet the long-expired discovery deadline, the late timing of the husband's request after trial was underway, and the prejudicial effect on the wife.

The wife also moved to strike certain witness testimony of Sumiao Chen, who owned a Cambridge restaurant in which the wife

---

[5] The husband initiated separate divorce proceedings in China in June 2019.

had invested.  At trial, Chen testified to the wife's statements regarding a potential capital investment in the restaurant, her ability to make a total initial investment of $300,000.  The judge sustained the wife's objection, noting the husband's opposition, on hearsay grounds and struck Chen's testimony describing the content of her conversations with the wife.

On April 5, 2022, the judge issued the divorce judgment along with findings of fact, rationale, and conclusions of law. The divorce judgment provided, in relevant part, that the wife would retain all assets held in her individual name[6] (having a combined value of over $1 million),[7] while the husband would

---

[6] With respect to the husband's allegation that the wife owned assets in China, the judge concluded that he failed to prove this allegation by a preponderance of the evidence.  The judge did, however, find that the wife was a part owner of a family-run catering business in China, but had transferred her interest in the business to her brother when she moved to the United States.  The judge also determined that the husband did not contribute to the acquisition of the business or its daily operations.

[7] The wife's assets included (1) the Lexington property (approximately $1 million equity value); (2) a one-third interest ($51,666 equity value) in a Florida condominium; (3) ownership interest in the Cambridge restaurant (investment of $200,000); (4) two bank accounts ($10,800 combined balance); and (5) the wife's car (no value specified by the judge).  The judge found that the wife acquired the interest in the Cambridge restaurant on behalf of her brother, but did not make a similar finding with respect to any other property held in the wife's name.

retain all assets held in his individual name[8] (having a known combined valued of under $3,000).  Ultimately, the judge found that the assets standing in each party's individual name "were never commingled into the fabric of the marriage," and the parties "did not acquire any joint marital assets throughout the marriage."[9]  The judgment also terminated the wife's temporary alimony obligation and awarded no general term alimony to the husband.  This appeal ensued.

Discussion.  1.  Evidentiary issues.  We review a judge's evidentiary decisions for an abuse of discretion.  Commonwealth v. Thomas, 476 Mass. 451, 465 (2017).[10]

---

[8] The husband's assets included (1) two bank accounts ($2,150 combined balance); (2) the husband's contracting business (no value given); and (3) the husband's car (no value given).

[9] The judge found that the husband did not contribute "financially or otherwise to the Lexington property," to the purchase price or condominium fees for the Florida property, or to the investment in the Cambridge restaurant.  The judge also found that the husband did not pay for the mortgage, real estate taxes, insurance, or maintenance on the Lexington property.

[10] "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made 'a clear error of judgment in weighing' the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives" (citation omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

7

a.  Chinese documents.[11]  The husband contends that the judge erred in excluding two sets of documents relating to alleged assets in China:  (1) the laundry basket documents that he took without permission from the apartment in China; and (2) the documents obtained by the husband's counsel in China.  We disagree.

Trial judges retain broad discretion to decide discovery disputes and the admission of evidence.  See Commonwealth v. Chilcoff, 103 Mass. App. Ct. 48, 57 (2023).  Regarding the laundry basket documents, the husband has not cited any authority mandating their admission.  Rather, the cases cited are nonbinding authority and inapposite,[12] as none address a judge's discretion to exclude non-translated documents at trial.[13]

_____

[11] To the extent that the husband attempts to relitigate the October 2019 contempt judgment, we reiterate that he did not timely appeal from this judgment.  Thus, the issue is not properly before us.  See note 1, supra.  Furthermore, nothing in the record establishes that the wife had possession, custody, or control over the documents.  More importantly, as discussed below, the record reveals no error in the judge's conclusion that the husband failed to comply with the discovery master's orders as approved by the judge.

[12] The cases husband relies upon include an unpublished Appeals Court decision addressing the admissibility of non-translated documents in an administrative agency proceeding, and unpublished decisions from other jurisdictions pertaining to discovery requests.

[13] Our case law contemplates situations where non-English evidence is inadmissible without translation.  Commonwealth v.

Furthermore, both the discovery master and the judge determined that the husband had failed to produce the documents pursuant to the August 29, 2019 order.  Concerning the laundry basket documents, the husband made general statements to the effect that the documents showed the wife's undisclosed assets in China.  These statements did not constitute a specific and sufficient offer of proof as to what the excluded documents showed that might have affected the result.  General statements were not enough.  Furthermore, when asked to produce an itemized list and copies of the documents, the husband failed to comply. "A judge has wide latitude to make such orders in regard to the failure [to comply with a discovery order] as are just" (quotations and citations omitted).  Atlas Tack Corp. v. Donabed, 47 Mass. App. Ct. 221, 224 (1999).  Therefore, on the record before us we cannot say that the judge abused her discretion in excluding the laundry basket documents.[14]

---

Portillo, 462 Mass. 324, 328-329 (2012) (statements recorded in another language require English transcript).  See Romano v. De Vito, 191 Mass. 457, 457 (1906) (libel in another language requires translation and proof that translation is correct).

[14] We are likewise unpersuaded by the husband's claim of error with respect to the exclusion of the documents obtained by his counsel in China, which he sought to introduce long after discovery had closed and trial had commenced.  Furthermore, the husband failed to make a sufficient offer of proof at trial regarding the content and import of the excluded documents.  We thus discern no abuse of discretion in the judge's ruling.  See Atlas Tack Corp., 47 Mass. App. Ct. at 224.  See also Cronin v. Strayer, 392 Mass. 525, 535-536 (1984) (scope and timing of

9

Finally, the evidentiary requirement of authentication necessitates that a judge determine whether sufficient evidence exists for a fact finder to find by a preponderance of the evidence that the matter in question is what its proponent claims. Mass. G. Evid. § 901 (a) (2024). See Commonwealth v. Welch, 487 Mass. 425, 440 (2021). Thus, a judge, especially when acting as the fact finder, is entitled to understand the content of the evidence proffered at trial in order to rule on its admissibility and to evaluate the content, credibility, and weight thereof. See, e.g., Commonwealth v. Portillo, 462 Mass. 324, 328 (2012); Romano v. De Vito, 191 Mass. 457, 457 (1906). Here, without English translations of these documents, the judge was unable to perform this role.

b. Witness testimony. The husband next contends that the judge erred in excluding Ms. Chen's testimony as inadmissible hearsay, where the husband sought to introduce the testimony as statements made by a party opponent. A statement made by an opposing party -- one which the adverse party gives the appearance of adopting or believing to be true -- is not

---

discovery is matter of judicial discretion and judges should not hesitate to exercise appropriate control over discovery process). However, in making this determination we note that we are unpersuaded by the discovery master's additional rationale that the failure to provide a certified translation of the Chinese documents "severely prejudices the [wife]."

10

hearsay.  Mass. G. Evid. § 801 (d) (2) (2024).  See Commonwealth v. Mendes, 441 Mass. 459, 467 (2004).

Although the context of Ms. Chen's testimony and the proffer made by the husband's counsel at trial are not entirely clear, we will assume, arguendo, that the testimony was admissible as a statement by a party opponent, and thus the judge erred in excluding it at trial.  That notwithstanding, the absence of the testimony did not prejudice the husband's case.  Much of what Ms. Chen's testimony described was already in evidence, including the wife's initial investment in the restaurant that she reported on her financial statements.  The judge also made a credibility determination that the wife made the investment in the Cambridge restaurant on her brother's behalf.  In the present circumstances, and in the context of a bench trial, we cannot say that the alleged error caused any prejudice or impacted the judge's conclusions.

2.  Property division.  The husband claims that the judge erred in applying G. L. c. 208, § 34, by failing to consider all the relevant factors in distributing the marital estate.  We agree.

"Our review of a judgment pursuant to the equitable distribution statute, G. L. c. 208, § 34, proceeds under a two-step analysis.  'First, we examine the judge's findings to determine whether all relevant factors in § 34 were

11

considered.'"[15]  Adams v. Adams, 459 Mass. 361, 371 (2011),

quoting Bowring v. Reid, 399 Mass. 265, 267 (1987).  "The second

tier of our review requires us to determine whether the reasons

for the judge's conclusions are 'apparent in his findings and

rulings.'"  Adams, supra, quoting Redding v. Redding, 398 Mass.

102, 108 (1986).  "A judge's determinations as to equitable

distribution will not be reversed unless 'plainly wrong and

excessive.'"  Adams, supra, quoting Redding, supra at 107.

Here, the judge, in assigning the wife approximately

ninety-nine percent of the parties' total assets,[16] stated that

the property division reflected her consideration of "the

respective contributions of the parties to the marital

partnership."  However, the judge's findings, which focused

solely on the parties' respective economic contributions to the

---

[15] The judge is required to consider "the length of the marriage, the conduct of the parties during the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties, [and] the opportunity of each for future acquisition of capital assets and income."  G. L. c. 208, § 34. The judge may also "consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates and the contribution of each of the parties as a homemaker to the family unit."  Id.

[16] Excluding the interest in the Cambridge restaurant that the judge found the wife had acquired on behalf of her brother. See note 6, supra.

12

marital estate,[17] failed to address the husband's contribution as the child's primary caregiver for much of the marriage (including the periods in which the parties lived separately prior to the divorce).  This was error.

"Once a judge gives weight to the discretionary statutory factor of spousal contributions, [the judge] is obliged to consider . . . child raising . . . and to make apparent in [the] findings and rulings their effect, if any, upon [the] decision" (quotations and citations omitted).  Wheeler v. Wheeler, 41 Mass. App. Ct. 743, 746 (1996).  "This must be done both for the period the parties are living together and during any period of separation prior to a divorce."  Id.  Here, the husband's role as the child's primary caregiver during the periods in which the parties lived apart was an ongoing contribution to the marital partnership.  See Imbrie v. Imbrie, 102 Mass. App. Ct. 557, 574 (2023); Wheeler, supra at 745-746.  However, the judge's findings and ultimate distribution of property do not reflect adequate consideration of this contribution.

---

[17] We are unpersuaded by the husband's contention that the judge erred in failing to make findings concerning his purported financial contributions to the assets acquired by the wife during the marriage.  As counsel for the husband acknowledged at oral argument, the husband made no proffer before or during trial showing that he made any noteworthy financial contributions to those assets.

13

To be sure, this was a nontraditional marriage during which the parties led mostly separate lives. However, it was also a long-term marriage of over twenty years that produced a child, whom the husband was primarily responsible for raising while the parties lived apart. That notwithstanding, the judge's failure to consider the husband's contribution as the child's primary caregiver was plainly wrong. See Adams, 459 Mass. at 371; Redding, 398 Mass. at 107. See also Charrier v. Charrier, 416 Mass. 105, 112 (1993) (error to award "the sole marital asset of significance" to the husband where judge "focused on the narrow issue of which spouse [financially contributed to the asset]" and "overlooked . . . the value of all the contributions of the spouses to the marriage, such as child care"); Wheeler, supra at 745-746. See also C.P. Kindregan, Jr., M. McBrien, & P.A. Kindregan, Family Law and Practice, § 56:17 (4th ed. 2013) (Unlike other States, "Massachusetts does not exclude 'separate' property from the assignable assets" comprising the marital estate for purposes of G. L. c. 208, § 34); T.E. v. A.O., 82 Mass. App. Ct. 586, 598 (2012).

Accordingly, so much of the divorce judgment pertaining to property division must be vacated and remanded for further findings reflecting appropriate consideration of the husband's role as the child's primary caregiver, and, if appropriate, redistribution of the marital estate.

14

3.  _Alimony_.  The husband next contends that the judge erroneously declined to award him general term alimony by "misapplying" certain statutory factors.[18]  Alimony is governed by the Alimony Reform Act (act), G. L. c. 208, §§ 48-55.  _Emery_ v. _Sturtevant_, 91 Mass. App. Ct. 502, 507 (2017).  "Section 53 (a) [of the act] sets forth the factors judges must consider when determining whether . . . to award alimony"; a judge may not "deny a request for alimony without making a fact-specific inquiry into the parties' circumstances, as evaluated through the application of these mandatory statutory factors."  _Cavanagh_ v. _Cavanagh_, 490 Mass. 398, 408-409 (2022).  See G. L. c. 208, § 53 (a).  Accordingly, in reviewing a judge's decision regarding alimony (including a decision to award no alimony), "we examine a judge's findings to determine whether the judge considered all of the relevant factors under G. L. c. 208, § 53 (a), and whether the judge relied on any irrelevant

_____

[18] Although the husband refers to the factors set forth in G. L. c. 208, § 34, the factors that the judge must consider when deciding whether to award alimony are set forth in G. L. c. 208, § 53 (a).  See _Cavanagh_ v. _Cavanagh_, 490 Mass. 398, 407-409 (2022).  These mandatory factors include "the length of the marriage; age of the parties; health of the parties; income, employment and employability of both parties, including employability through reasonable diligence and additional training, if necessary; economic and non-economic contribution of both parties to the marriage; marital lifestyle; ability of each party to maintain the marital lifestyle; [and] lost economic opportunity as a result of the marriage."  G. L. c. 208, § 53 (a).

15

factors." Zaleski v. Zaleski, 469 Mass. 230, 236 (2014). "[I]t is important that the record indicate clearly that the judge considered all the mandatory statutory factors, and that the reason for [the judge's] conclusion is apparent in [the judge's] findings" (quotation and citation omitted). Id. "A judgment will not be disturbed on appeal unless 'plainly wrong and excessive.'" Id., quoting Heins v. Ledis, 422 Mass. 477, 481 (1996).

The husband challenges the judge's treatment of the statutory factors pertaining to his earning capacity and the marital lifestyle, see G. L. c. 208, § 53 (a), asserting that the judge erroneously attributed income to him and failed to properly consider his ability to maintain the marital lifestyle. With respect to the husband's income, the judge was "not limited to [considering the husband's] actual earnings" -- she was permitted to instead "consider [his] potential earning capacity." Heins, 422 Mass. at 485. See Davae v. Davae, 100 Mass. App. Ct. 54, 57 (2021) (if party "is both underemployed and capable of earning more with reasonable effort," judge "should consider potential earning capacity" and attribute income to that party [quotations and citation omitted]). The judge was required to "consider a nonexclusive list of factors,"

16

set forth in the Child Support Guidelines,[19] "to the extent known and presented to the [judge], focused on the [husband's] particular circumstances" (quotations and citation omitted). Davae, supra at 58. See Child Support Guidelines § 1(E)(3) (Jun. 2018) (listing factors for judge to consider when attributing income).

Here, the judge's findings reflect appropriate consideration of the factors for attribution of income that were in evidence. Specifically, the judge found that the husband "has the ability to work and financially support himself. He is presently voluntarily self-employed earning a weekly income of $540.00," but he has "the education, work experience, and skills to earn more than minimum wage."[20] Additionally, the judge concluded that the husband presented no evidence of a disability that prevented or limited his ability to work. Although the judge's findings could have been more detailed on this issue, we

---

[19] The principles for attribution of income set forth in the Child Support Guidelines are applicable to both child support and alimony. See Davae, 100 Mass. App. Ct. at 57-58; Emery, 91 Mass. App. Ct. at 508-509. See also G. L. c. 208, § 53 (b) (income for purposes of alimony defined as set forth in child support guidelines).

[20] The judge found that the husband, a college graduate, had been employed as an engineer, business owner, and semiconductor hardware research and development manager in China between 1993 and 2009, before he moved to the United States to pursue a graduate degree.

17

discern no abuse of discretion in the judge's ultimate assessment of the husband's earning capacity.  See Davae, supra at 57 (attribution of income reviewed for abuse of discretion).

With respect to the marital lifestyle statutory factor, the judge made a general finding that the parties "lived a middle-class lifestyle" during the marriage.  The husband claims that the judge failed to adequately consider his ability to maintain the marital lifestyle; which is, in essence, an assertion that the judge failed to adequately ascertain his need for alimony.[21]  See Cavanagh, 490 Mass. at 407-408, quoting Young v. Young, 478 Mass. 1, 6 (2017) ("the recipient spouse's need for support is generally the amount needed to allow that spouse to maintain the [marital] lifestyle" [emphasis omitted]).  However, because the parties lived separately for most of the marriage, there was little evidence of "the typical way [they] regularly allocated their income during the marriage."  Openshaw v. Openshaw, 493 Mass. 599, 605 (2024).  As such, we cannot fault the judge for not making more specific findings concerning the marital lifestyle or the husband's ability to maintain it.  We therefore discern no error on this record with respect to the judge's consideration of the marital lifestyle factor.

---

[21] The judge found that the husband "presented no testimony of his ongoing need for alimony."  The husband does not specifically challenge this finding in his brief.

18

While the judge did not err in considering the husband's earning capacity or the marital lifestyle, the judge did err (as discussed <u>supra</u>) in failing to consider the husband's noneconomic contribution as the child's primary caretaker -- which is a mandatory factor set forth in § 53 (<u>a</u>). Because of this omission, and because alimony and property division "are interrelated remedies that cannot be viewed apart" (citation omitted), <u>Sampson</u> v. <u>Sampson</u>, 62 Mass. App. Ct. 366, 369 (2004),[22] we must vacate the portion of the divorce judgment pertaining to alimony and remand the matter for further findings and reconsideration of both alimony and property division. <u>Id</u>. at 371.

<u>Conclusion</u>.[23] So much of the divorce judgment as pertains to property division and alimony is vacated, and the case is remanded for further proceedings consistent with this memorandum

---

[22] A judge "may make a judgment for either of the parties to pay alimony to the other under [G. L. c. 208, §§ 48-55]. . . . In addition to or in lieu of a judgment to pay alimony, the [judge] may assign to either [party] all or any part of the estate of the other." G. L. c. 208, § 34.

[23] The husband's request for attorney's fees and costs is denied.

and order.  The divorce judgment is affirmed in all other respects.

_So ordered_.

By the Court (Green, C.J.,
   Neyman & Englander, JJ.[24]),

_Paul Little_

Clerk

Entered:  August 15, 2024.

---

[24] The panelists are listed in order of seniority.