NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-484                                          Appeals Court

CAROLYN FEHRM-CAPPUCCINO  vs.  GARY J. CAPPUCCINO.

No. 15-P-484.

Norfolk.     April 11, 2016. - October 18, 2016.

Present:  Cypher, Agnes, & Massing, JJ.

Divorce and Separation, Modification of judgment, Child support.
    Parent and Child, Child support.  Contempt.  Practice,
    Civil, Contempt.

Complaint for divorce filed in the Norfolk Division of the
Probate and Family Court Department on July 14, 2008.

A complaint for modification, filed on January 12, 2012,
and a complaint for contempt, filed on November 20, 2013, were
heard by George F. Phelan, J.

Karen W. Stuntz for the mother.
Jonathan E. Fields for the father.

CYPHER, J.  In this appeal from a "judgment on complaint

for modification and complaint for contempt" entered by a judge

of the Probate and Family Court on February 21, 2014, Carolyn

Fehrm-Cappuccino (mother), the former wife of Gary J. Cappuccino

(father), challenges the downward modification of child support

and the lack of a contempt finding against the father.  We address the mother's arguments in turn.

1.  <u>Modification</u>.  The parties were divorced on January 4, 2010, pursuant to a judgment of divorce that incorporated their separation agreement.  Pursuant to the separation agreement, the mother received primary physical custody of the parties' four children and the father was required to pay weekly child support of $577.  The first two years of the father's child support payments were deemed "prepaid" in exchange for the mother's receipt of the marital home, with the father's weekly child support payments scheduled to "resume" in January, 2012.  On January 12, 2012, the father filed a complaint for modification of his child support obligation.  On February 21, 2014, a judge of the Probate and Family Court entered a judgment reducing the father's weekly child support obligation to $371, retroactive to January 24, 2012.  On appeal, the mother challenges the reduced child support amount, asserting that it was the result of several errors made by the judge when determining the parties' respective incomes.[1]

---

[1] As an initial matter, the mother argues that the father's complaint should have been dismissed as he failed to plead facts sufficient to warrant modification.  However, based on the record before us, it appears that the mother did not assert this defense until after the trial was held and the judgment was entered.  As this defense was not timely raised below, see Mass.R.Dom.Rel.P. 12(a)-(b), it is deemed waived on appeal and we decline to consider it.  See <u>Carey</u> v. <u>New England Organ Bank</u>,

a.  Exclusion of the father's rental income.  The mother first contends that the judge improperly excluded the father's rental income from Canton Lanes Limited Partnership (Canton Lanes) of approximately $507 per week when calculating child support.[2]

The Child Support Guidelines (guidelines) "have presumptive application to actions to modify existing [child support] orders."  Croak v. Bergeron, 67 Mass. App. Ct. 750, 754 (2006).  The guidelines define "income . . . as gross income from whatever source . . . includ[ing] . . . income derived from businesses/partnerships . . . [and] net rental income."  Child Support Guidelines § I.A(7) & (26) (effective August 1, 2013).  Accordingly, there is a "rebuttable presumption" that net rental

_____

446 Mass. 270, 285 (2006).  The mother further argues that modification of child support was inappropriate because there had been no "material change" in the parties' financial circumstances since the divorce.  This argument fails because the judge did not find "material change in circumstances," see Pierce v. Pierce, 455 Mass. 286, 293 (2009); rather, he found an "inconsistency" between the amount of the existing child support order and the amount that would result from application of the Child Support Guidelines (guidelines).  See Morales v. Morales, 464 Mass. 507, 511 (2013) ("[W]hen a complaint seeking modification of a child support order is filed, modification is presumptively required whenever there is an inconsistency between the amount of child support that is to be paid under the existing support order and the amount that would be paid under the guidelines").

[2] Canton Lanes holds title to a shopping center and receives rental income from its tenants.  The father's 14.62009 percent interest in Canton Lanes was valued at $774,860 in 2009.  The father's share of the 2012 rental income from Canton Lanes was $26,379, which averages out to $507 per week.

income derived from a partnership "should be included when calculating income for a child support obligation." Wasson v. Wasson, 81 Mass. App. Ct. 574, 577-578 (2012).

Notwithstanding that presumption, the judge in this case excluded the father's Canton Lanes rental income on the basis that it "emanat[es]" from an asset assigned to the father at the time of the divorce. The judge concluded that the mother's waiver of "all right, title and interest in and to" Canton Lanes in the separation agreement operated as a waiver of her right to support from the father's Canton Lanes rental income. However, in so concluding, the judge overlooked the fact that the parties considered the father's Canton Lanes income when setting his initial child support obligation in the separation agreement.[3] See Cooper v. Cooper, 62 Mass. App. Ct. 130, 134 (2004), quoting from Huddleston v. Huddleston, 51 Mass. App. Ct. 563, 568 (2001) ("When the judgment to be modified incorporates an agreement of the parties, we . . . will 'review the findings to determine whether the judge gave appropriate consideration to the parties' intentions as expressed in their written agreement'"). Moreover, "even if the mother did waive her right to any

---

[3] The separation agreement provides, in relevant part, that the father "is presently unemployed and receiving a combination of unemployment insurance benefits and Schedule K-1 distributions from his interest in Canton Lanes Limited Partnership. The parties agree that the [father] [shall] pay child support in the amount of $577 per week or $30,000 annually."

interest in the income at issue, that waiver could not operate to waive her children's right to child support from that income."  Hoegen v. Hoegen, 89 Mass. App. Ct. 6, 11 (2016).

To the extent that the judge relied on Zeghibe v. Zeghibe, 82 Mass. App. Ct. 614 (2012), for the proposition that treating Canton Lanes both as an asset and as a stream of income would constitute inequitable "double counting,"[4] that reliance was misplaced.  In Zeghibe, a case involving modification of child support, this court set aside the attribution of income to the husband stemming from his liquidation of an individual retirement account (IRA), as the husband had "received the IRA funds at the time of the divorce as part of the division of assets and not as a stream of income for purposes of computing support."  Id. at 621.  Here, unlike in Zeghibe, there is no risk of double counting, where "neither the value of [the father's interest in Canton Lanes] nor the [father's] ability to earn income is diminished by treating the [father's interest in

---

[4] The term "double counting" (or "double dipping") is used "to describe the seeming injustice that occurs when property is awarded to one spouse in an equitable distribution of marital assets and is then also considered as a source of income for purposes of imposing support obligations."  Croak v. Bergeron, 67 Mass. App. Ct. at 758-759, quoting from Champion v. Champion, 54 Mass. App. Ct. 215, 219 (2002).  "Although '[c]ourts and commentators have often disagreed . . . as to what constitutes double-dipping,' . . . there is nothing . . . that prohibits double dipping as matter of law."  Id. at 759, quoting from Sampson v. Sampson, 62 Mass. App. Ct. 366, 374 (2004).  "Rather, . . . the judge must look to the equities of the situation to make [his] determination."  Ibid.

Canton Lanes] as a marital asset as well as a source of income by which [the father] can meet his support obligations." Champion v. Champion, 54 Mass. App. Ct. 215, 221 (2002).  See Dalessio v. Dalessio, 409 Mass. 821, 828 (1991).[5]  As we see nothing in the judge's findings that would overcome the presumption that the father's Canton Lanes rental income should be included when calculating child support, it was an abuse of discretion for the judge to exclude that income.  See Hoegen v. Hoegen, 89 Mass. App. Ct. at 8-11.

We note that the judge also excluded from his child support calculation the mother's rental income from Fiddlers Landing LLC (Fiddlers Landing), an asset which she received in the divorce.[6] While the father has not appealed the exclusion of the mother's rental income, the mother's counsel acknowledged at oral argument that each party's rental income should have been

---

[5] "So long as it is possible . . . to identify separate portions of a given asset of a divorcing spouse as the separate bases of the property assignment and any alimony or support obligations (thus avoiding redistribution by an alimony or support order of specific assets that already have been equitably assigned), there is nothing improper about including a particular asset within a spouse's assignable estate, assigning part of it, and then counting its remainder for alimony or child support purposes."  Dalessio v. Dalessio, 409 Mass. at 828.

[6] The mother has a one-third interest in Fiddlers Landing, which holds title to real property that is currently rented out at $3,700 per month.  The mother's one-third share of the Fiddlers Landing rental income is approximately $284 per week, though it appears that this figure represents gross -- rather than net -- rental income.

included in the child support calculation. Accordingly, when recalculating child support on remand, the judge should include the father's net rental income from Canton Lanes and the mother's net rental income from Fiddlers Landing.

b. <u>Contribution from the mother's cohabiting boy friend</u>. The mother next contends that the judge abused his discretion by attributing income to her based on contributions from her cohabiting boy friend.

While "'[t]he guidelines and our case law leave the definition of income flexible, and the judge's discretion in its determination broad[,]' . . . . that discretion is not without bounds." <u>Murray</u> v. <u>Super</u>, 87 Mass. App. Ct. 146, 155 (2015), quoting from <u>Casey</u> v. <u>Casey</u>, 79 Mass. App. Ct. 623, 634 (2011). With respect to financial contributions from a household member, the guidelines neither prohibit, nor specifically require, their inclusion when calculating child support. <u>Murray</u> v. <u>Super</u>, <u>supra</u>.[7] Instead, the judge must make detailed findings to justify including contributions from a household member in a child support recipient's income. <u>Ibid</u>. This is largely due to the fact that children should "be supported by the financial

---

[7] Contributions from a household member are not expressly included in the guidelines' expansive definition of "income." Child Support Guidelines § I.A. However, the "catch-all" provision allows a judge to consider "any other form of income or compensation not specifically itemized" in the guidelines. <u>Id</u>. at § I.A(28).

resources of their parents[,]" rather than by the resources of third parties. Id. at 154, quoting from M.C. v. T.K., 463 Mass. 226, 231 (2012).

Here, the judge attributed income of $346 per week to the mother based on his finding that the mother's cohabiting boy friend contributes $1,500 per month to the mortgage.[8] However, the judge did not make "[a]dditional findings that would aid our analysis, includ[ing], but . . . not limited to, . . . the lack of an obligation of the mother's [boy friend] to support the children, the manner in which the mother's and the children's lifestyles are altered by these funds, the discretion that the mother's [boy friend] maintains in payment of these funds, and the manner in which the mother would support her household absent these funds." Murray v. Super, 87 Mass. App. Ct. at 155.[9]

---

[8] The judge appeared to rely on the guidelines' catch-all provision when treating the contributions from the mother's boy friend as income for purposes of calculating support. However, to the extent that the judge may have alternatively treated the boy friend's contributions as analogous to "spousal support received from a person not a party to this order," he was mistaken in doing so. Child Support Guidelines § I.A(18).

[9] The judge found that the mother's boy friend, with whom she has been living since 2012, "contributes towards the household expenses. The full extent of that contribution is not fairly reflected on [the mother's] financial statement." However, there is no mention in the judge's findings regarding the mother's current living expenses, nor the extent to which the boy friend's contributions serve to reduce them. We note that the mother's January, 2014, financial statement does indeed reflect a reduced weekly mortgage expense as a result of her boy friend's contribution to same.

"Without such findings, the facts as they presently stand are insufficient to determine whether the [boy friend's] contributions should be included in the child support calculations under the guidelines." Ibid. Accordingly, the attribution of income to the mother based on her boy friend's contribution is set aside and remanded for further findings.

c. The mother's earning capacity. The mother further contends that the judge abused his discretion by attributing an earning capacity to her of $750 per week.

"Income may be attributed where a finding has been made that either party is capable of working and is unemployed or underemployed." Child Support Guidelines § I.E. In making such a finding, "[t]he Court shall consider all relevant factors including without limitation the education, training, health, past employment history of the party, and the availability of employment at the attributed income level. The Court shall also consider the age, number, needs and care of the children covered by this order. If the Court makes a determination that either party is earning less than he or she could through reasonable effort, the Court should consider potential earning capacity rather than actual earnings in making its order." Ibid.

Here, the mother, who does not have a college degree, was unemployed both during the marriage and at the time of the divorce. However, at "some point" after the divorce, the mother

began accepting work as an independent contractor, earning an hourly rate of $25.[10] The judge found that "[t]he last time [the mother] accepted a contract to do this kind of work was October, 2013 . . . . [and] she ha[s] made no effort to find any other type of work." The mother claimed that she was no longer receiving contracts because she had to turn down several contracts when two of the parties' children were experiencing medical issues. While the mother reported earnings of only $46.92 per week, the judge ultimately attributed an earning capacity to her of $750 per week. The judge found that the mother is capable of working thirty hours per week at her previous hourly rate of $25. However, there is no indication in the judge's findings, or in the record, that the mother has ever worked thirty hours per week, or that thirty hours per week of contract work is currently available to her.[11] Moreover, while the judge did not credit the mother's assertion that she "cannot

---

[10] The judge found that "[t]he only evidence on the issue of mother's pay rate was an explanatory note 5 on her April 5, 2012 financial statement where she indicated her billing rate as an independent field researcher at $25 per hour."

[11] Indeed, the judge acknowledged that "[t]here was no testimony about how many contracts and what the rate or amounts of pay mother received per contract and how many contracts, and their value or pay rates, she has turned down. The only documentary evidence about [the] mother's contract work was two 1099 forms for 2012 indicating she earned a total of $4,781.25."

accept more work" due to her child care responsibilities,[12] the parties' four children are in the mother's care all but two weekends per month pursuant to the separation agreement.[13]

Under these circumstances, where there is no evidence to support the judge's finding that thirty hours per week of contract work is currently available to the mother, and where the mother does not have a college degree, has minimal work experience, and is responsible for the overwhelming majority of the children's care, the amount of income attributed to the mother "is not appropriate." Casey v. Casey, 79 Mass. App. Ct. at 631.[14]  This is especially true given that the father is

_____

[12] The judge found that the mother often worked until 2:00 A.M. "to accommodate clients from Europe," which "undercuts her argument that she needs to be home to care for the children and cannot accept more work."

[13] While the judge found that the "[f]ather sees the children approximately [four] days per month," the judge later found that the mother "claimed, without persuasive proof or documentation, that father's parenting time was only 15% and conversely her parenting time with the children was 85%." However, we note that the percentages asserted by the wife are roughly equivalent to the parenting time allotted to each party under the terms of the separation agreement.

[14] The "imputation of income is not appropriate . . . where [the mother's] . . . employer had reduced her hours, and there was no reason to believe that she would be able to work more hours at the same job. . . .  Nor was there any evidence about the availability of other full-time or part-time employment in the same geographic area, or any evidence about the [mother's] skill level or specialized training, or what salaries were commonly paid to someone in her situation. . . .  In addition there were few, if any, periods during the parties' long-term

seasonally unemployed, yet the judge declined to attribute any additional income to him. Moreover, "to the extent that the judge based his child support award on a presumption that the child[ren] spend[] one-third of [their] time with [the] father, this was error." Id. at 635. Accordingly, on this record, it was an abuse of discretion to attribute an earning capacity of $750 per week to the mother. See L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014), quoting from Picciotto v. Continental Cas. Co., 512 F.3d 9, 15 (1st Cir. 2008) ("[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made 'a clear error of judgment in weighing' the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives").

2. Contempt. The mother next contends that the judge abused his discretion by declining to find the father in contempt, where the uncontroverted evidence demonstrated that the father failed to pay a $10,000 lump sum by June 7, 2013, as required by the judge's March 6, 2013, judgment.[15]

---

marriage when the [mother] worked full time." Casey v. Casey, 79 Mass. App. Ct. at 631.

[15] The March 6, 2013, judgment required the father to pay the mother a lump sum of $10,000 by June 7, 2013, to satisfy a portion of his child support arrearage totaling $22,894.79. In November, 2013, the mother filed a complaint for contempt asserting that the father had failed to pay the $10,000 lump

"[A] civil contempt finding [must] be supported by clear and convincing evidence of disobedience of a clear and unequivocal command." K.A. v. T.R., 86 Mass. App. Ct. 554, 567 (2014), quoting from Birchall, petitioner, 454 Mass. 837, 853 (2009). Here, the judge concluded that while the March 6, 2013, judgment was "clear and unequivocal," "there was no direct evidence" of the father's failure to pay the $10,000 lump sum. The judge found that "[a]lthough [the] mother testified that [the] father owed $10,000 'as alleged in [her] complaint'" for contempt, her "testimony falls far short of the required clear and convincing evidence of failure to comply." It appears that the father did not file an answer to the mother's complaint for contempt, and did not offer testimony, or any other evidence, to refute the mother's allegation that he had failed to pay the $10,000 lump sum. While the judge is not required to accept uncontroverted evidence, see Casey v. Casey, 79 Mass. App. Ct. at 633, it is difficult to perceive how the mother could have provided "direct evidence," apart from her own testimony, of something that she claims did not occur. As there is no indication that the judge found the mother's testimony to lack credibility with respect to the contempt allegation, the basis for the judge's decision is unclear. Accordingly, the contempt

---

sum. The mother's November, 2013, complaint for contempt was thereafter consolidated with the father's January, 2012, complaint for modification for purposes of trial.

adjudication is set aside and remanded so that the judge may further explain his rationale, or make an alternate disposition, if necessary.

Finally, we address an issue that will arise on remand. In the March 6, 2013, judgment, the father was found to be in arrears of his child support obligation by $22,894.79, and was ordered to pay (in addition to the $10,000 lump sum) an extra $100 per week on top of his regular child support payments of $577. However, upon retroactively reducing the father's child support payments to $371 in the February 21, 2014, judgment, the judge "suspended" the father's obligation to pay an additional $100 per week toward the arrearage. Because the judge must recalculate child support on remand, he should also determine the father's current child support arrearage in light of the new support amount, and set an appropriate repayment schedule. The judge may take additional evidence and enter further findings to accomplish this.

Conclusion. For the reasons set forth above, the February 21, 2014, "judgment on complaint for modification and complaint for contempt" is vacated and the matter is remanded for further proceedings consistent with this opinion. The father's prior child support obligation of $577 per week shall be reinstated

without prejudice pending final disposition.  Both parties'
requests for appellate fees and costs are denied.[16]

So ordered.

---

[16] To the extent that we do not address the parties' other contentions, "they 'have not been overlooked.  We find nothing in them that requires discussion.'"  Department of Rev. v. Ryan R., 62 Mass. App. Ct. 380, 389 (2004), quoting from Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).